**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X

U.S. COMMODITY FUTURES TRADING
COMMISSION,

                               Plaintiff,

               - against -

VINCENT PATRICK MCCRUDDEN,
MANAGED ACCOUNTS ASSET
MANAGEMENT, LLC, ALNBRI
MANAGEMENT, LLC,

                            Defendants.

-------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**

CV 10-5567 (DRH) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.      PRELIMINARY STATEMENT**

       Plaintiff U.S. Commodity Futures Trading Commission ("CFTC" or "the Commission")

submitted a letter to Hon. Denis Hurley, the District Judge assigned to this matter, requesting "a

pre-motion conference concerning the Commission's intended motion for default judgment under

Fed. R. Civ. P. 55(b)(2) against defendants Managed Accounts Asset Management, LLC

("MAAM") and Alnbri Management, LLC ("Alnbri") (together, the "Corporate Defendants").

*See* DE 132.  The CFTC stated that a notation of default has already been entered against the

Corporate Defendants, presumably referring to the March 5, 2012 Electronic Notice of the

Clerk's "Entry of Default" as to both Corporate Defendants.  In addition, on October 20, 2014,

CFTC's counsel requested that a Certificate of Default be entered against the individual

defendant, Vincent Patrick McCrudden ("Defendant" or "McCrudden") (DE 128).  The  Clerk's

Office issued the Certificate of Default that same day, October 20, 2014 (DE 129).

According to counsel for the CFTC, "the Commission seeks to bring a consolidated motion against the Corporate Defendants because they are similarly situated with respect to their failure to retain counsel in this litigation and the claims and allegations against them are closely related." DE 132. On that basis, the CFTC requested that Judge Hurley hold a pre-motion conference or, alternatively, set a briefing schedule for the motion. Counsel for the CFTC also noted that the Commission intended to bring a separate motion for entry of default judgment against the individual defendant Vincent McCrudden. *Id*. Judge Hurley referred to this Court the CFTC's request for a conference as well as the underlying request to move for default judgment against the Corporate Defendants. *See* November 14, 2014 Electronic Order.

## II.    PROCEDURAL BACKGROUND

### A.    The CFTC's November 13, 2014 Letter to Judge Hurley

In its letter to Judge Hurley requesting a conference for purposes of filing a motion for entry of default judgment against the Corporate Defendants, the CFTC points out that Judge Hurley previously stayed this litigation – after permitting Defendants' counsel to withdraw from the case – in order to give the Corporate Defendants time to find new counsel since the corporations cannot proceed *pro se* as a matter of law. DE 132 referring to DE 21. The CFTC maintains that the "well-pleaded allegations establish that the Corporate Defendants are liable for the violations set forth in Counts Two and Three of the Complaint." *Id*. According to the Commission, each of the Corporate Defendants "acted as a commodity pool operator without registering with the Commission or claiming a valid exemption, in violation of the Commodity Exchange Act." *Id*. (citing Compl. ¶¶ 20 n. 1, 22, 24-30). The CFTC further contends that MAAM also violated Commission Regulations by failing to correct the inaccurate information

contained in its notice of exemption.  *Id.*

As to the factors the Court is required to consider in weighing a request for entry of default judgment, the CFTC relies upon the often-cited standard from *Mason Tenders Dist. Council v. Duce Const. Corp.*, No. 02 Civ. 9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003).  In *Mason Tenders*, the court held that three factors must be considered in determining whether a default judgment should be entered or whether a default should be set aside:  "(1) whether defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the nondefaulting party would suffer as a result of the denial of the motion for default judgment."  *Id.* (citing *Mason Tenders District Council v. M & M Contracting & Consulting*, 193 F.R.D. 112, 114-15 (S.D.N.Y. 2000).   CFTC's counsel points to certain decisions applying this standard – a number of which were issued previously by the undersigned[1] – and concludes that default judgment against the Corporate Defendants is appropriate here.  DE 132.  The Commission seeks to bring a consolidated motion against MAAM and Alnbri based on the fact that both Corporate Defendants are "similarly situated with respect to their failure to retain counsel . . . and the claims against them are closely related."  *Id.* The Commission believes it should be permitted to proceed with motion practice because, it argues, the default here was willful in that the Corporate Defendants failed to retain counsel even after the Court instructed them to do so.  *Id.*  Asserting that the Defendants have failed to file an Answer, the CFTC states that the Court is unable to make a determination whether the Corporate

---

[1]     *See, e.g.*, *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 120-23 (E.D.N.Y. 2011) (adopting report and recommendation); *Ainbinder v. Money Center Fin. Grp., Inc.*, No. 10 CV-5270, 2014 WL 294162, at *8 (E.D.N.Y.  Jan. 24, 2014); *Joseph v. HMDJ Restaurant, Inc.*, 970 F. Supp. 2d 131, 148 (E.D.N.Y. 2013) (adopting report and recommendation).

Defendants have a meritorious defense, a factor which favors the granting of a default judgment. *Id*. Finally, the Commission claims it will be prejudiced by the denial of its intended motion for default judgment because there are no other steps available in this Court to secure relief against the Defendants. *Id.*

The November 13, 2014 letter from CFTC's counsel noted that a "cc:" of the letter was being sent to defendant Vincent McCrudden "via ecf, email and US Mail." DE 132. The first-class mail copy of the letter was sent to defendant McCrudden's then known address in Long Island City, New York. This Court has some concern whether that letter ever reached defendant McCrudden. Up until one week before the CFTC's November 13, 2014 letter, defendant McCrudden had been in regular contact with the Court and CFTC's counsel. In fact, the last correspondence reflected in the electronic docket at that time is a letter dated November 4, 2014 from defendant McCrudden to the Pro Se Office asking that they respond to certain questions he raised. *See* DE 133. There has been no further correspondence from McCrudden himself since that time. The Court is aware that defendant McCrudden was arrested on or about November 17, 2014 and was incarcerated for some period of time thereafter. Based on his prior actions in this case, the Court finds it unusual that defendant McCrudden did not file any response to DE 132.

Before addressing the issue of whether the CFTC should be permitted to proceed with a motion for entry of default judgment against the Corporate Defendants, the Court believes it is necessary to review the history of discovery in this case which bears directly on the issue of default.

### B. The Discovery Process Undertaken in this Case

#### 1. *Early Post-Service of the Complaint*

The progress of discovery in this case has been lengthy and at times contentious.
Defendant Vincent McCrudden was personally served with the Complaint on February 1, 2011
by a deputy United States Marshal while McCrudden was in the cellblock of the U.S. Marshal's
Office in Central Islip. *See* DE 10 at 2 and DE 10-2.   On March 2, 2011, the CFTC requested,
pursuant to Local Civil Rule 55.1, that the Clerk of the Court enter a certificate of default against
all of the Defendants, as provided in Fed. R. Civ. P. 55(a). *See* DE 11.   Before the Clerk's
Office took any action on the request for a certificate of default, Brue Barket, Esq., who was then
representing defendant McCrudden in a separate criminal matter, entered a Notice of Appearance
in this civil action on March 9, 2011 and sought an extension of time for Defendant McCrudden
to answer the Complaint. *See* DE 14.

Attorney Barket pointed out that defendant McCrudden was being held without bail
pending trial. *Id.*  He also noted that (1) plaintiff CFTC had served its Local Civil Rule 55.1
application for a Clerk's Certificate of Default at McCrudden's former residence in Dix Hills,
where McCrudden had not lived in years, and (2) the other defendant entities of which Vincent
McCrudden is the principal had not yet answered because McCrudden had been attempting to
retain counsel with experience in the matters raised in the Complaint. *Id.*  McCrudden's efforts
had been hampered by his incarceration and the fact that he had not worked in a long time. *Id.*
Attorney Barket asserted that the failure to answer was not willful and asked that the defendants
be given a 30-day extension of time within which to oppose the application for a Clerk's
Certificate of Default. *Id.*  Judge Hurley construed the letter as a request to set aside the entry of

default under Rule 55(c) and directed CFTC's counsel to respond to Attorney Barket's letter by March 21, 2011. *See* Electronic Order of March 11, 2011.

The CFTC, by letter dated March 18, 2011, responded to Judge Hurley and argued that the defendants failed to meet the criteria established in the Second Circuit for setting aside the default and that Judge Hurley should deny the request. *See* DE 15. After reviewing the CFTC's response, Judge Hurley waived his pre-motion conference requirement and set a briefing schedule on defendants' motion for entry of default judgment. *See* May 4, 2011 Electronic Order. On May 27, 2011, before any of the motion papers were served, Attorney Barket filed a letter request to Judge Hurley seeking: (1) permission to file a motion to withdraw as counsel for the defendants; (2) a stay of this civil case pending the outcome of the criminal trial which was anticipated for July 2011; and (3) an extension of the briefing schedule pending the determination of the motion to withdraw and the motion for a stay *See* DE 17. Judge Hurley directed Attorney Barket to serve a copy of his application on the defendants forthwith and to file proof of such service on ECF. He further directed that any response to Attorney Barket's letter had to be filed on or before June 7, 2011 and that he was holding in abeyance the briefing schedule set forth in the May 4, 2011 Order pending resolution of the outstanding issues. *See* May 31, 2011 Electronic Order.

On May 27, 2011, Attorney Barket filed another letter to Judge Hurley stating that defendant McCrudden had also written directly to the Court and did not want Attorney Barket or his firm to represent him in the civil matter because the subject matter was not within the firm's area of expertise. *See* DE 18. Attorney Barket requested that the Court extend the briefing schedule once again until the motion to withdraw as counsel was resolved. *Id.* The CFTC filed a

letter on June 6, 2011 opposing both of Attorney Barket's requests. *See* DE 20. Counsel for the CFTC pointed out that the defendants failed to satisfy the criteria for a stay and that the request to withdraw as counsel should be denied because such action would leave the Corporate Defendants unrepresented. *Id.* The Commission went on to state that counsel for McCrudden "admittedly entered his appearance in this matter in an effort to avoid a default judgment being entered against his clients: McCrudden, MAAM and Alnbri. *Id.* On June 23, 2011, Judge Hurley issued an Order granting the motion of the Quadrino Schwartz law firm, by Bruce Barket, Esq., to withdraw as counsel. *See* DE 21. In doing so, Judge Hurley cautioned that the Corporate Defendants – MAAM and Alnbri – were not permitted to proceed *pro se* as a matter of law and, therefore, a substitution of counsel had to be entered on behalf of the two corporations. On that basis, Judge Hurley held in abeyance the briefing schedule on the anticipated motion to set aside the entry of default. The defendants were given 60 days to facilitate the substitution of counsel and all proceedings were stayed during that 60-period. *Id.*

On August 15, 2011, defendant McCrudden asked for a further stay of these proceedings based, among other reasons, on his incarceration, his lack of financial wherewithal to hire counsel, and his lack of legal materials and resources. *See* DE 24. The Commission objected and asked Judge Hurley to deny the request for a continued stay. DE 25. By Electronic Order dated September 14, 2011, Judge Hurley granted a further 60-day extension of the stay but cautioned defendant McCrudden that if the defendants had not retained counsel upon the expiration of that 60-day period, then the Commission would be permitted to renew its motion for a default judgment against the Corporate Defendants. Further, McCrudden would be required to proceed *pro se* at that time.

Defendant McCrudden submitted a letter to Judge Hurley on October 4, 2011 asking that Corporate Defendant MAAM be dismissed from this action. DE 26. Shortly thereafter, on October 13, 2011, the Clerk's Office received a letter from McCrudden addressed to Judge Hurley stating that he had been unable to retain counsel and will "need to continue Pro Se." DE 28. Defendant McCrudden attached to that letter a copy of a settlement offer he was making to the CFTC which he hoped the CFTC would consider as a good-faith offer to settle. *Id.* Counsel for the CFTC responded to Judge Hurley requesting that he refer the matter to this Court for settlement discussions. DE 30. Judge Hurley did so and this Court scheduled a settlement conference for December 12, 2011. *See* DE 31. Meanwhile, defendant McCrudden filed a motion seeking to dismiss the case as against all of the defendants. DE 32.

Prior to the settlement conference, the CFTC renewed its request for entry of default against the two Corporate Defendants because they had not obtained counsel. DE 34. McCrudden opposed that motion on November 22, 2011, asserting that the two operations had a constitutional right to a defense and that "entering a default judgment in the amount of $58 million in a technical rules violation is unconscionable." DE 37. McCrudden reiterated that his incarceration was limiting his ability to access resources to defend the lawsuit. Ultimately, defendant McCrudden asked that Judge Hurley grant a stay until six months after his release from prison. *Id.*

### 2.    *The Discovery Process in 2012*

The settlement conference held on December 12, 2011 was not successful. On December 15, 2011, this Court issued an Order setting a schedule for Phase I of discovery. *See* DE 41. The parties were directed to serve any document requests and interrogatories by

January 13, 2012. All responses to those discovery demands were to be served by February 15, 2012. A telephone conference with the parties and the Court was set for February 28, 2012 to address any issues with the responses as well as the next steps in the discovery process. *Id*.

On January 5, 2012, defendant McCrudden sent a letter to Judge Hurley in which he stated that the defendants were awaiting decisions on the previous request for dismissal of the action and additional stays. *See* DE 43. He went on to note that "... if Defendants are forced to proceed, they would request the following material and documentation..." *Id*. The list consisted of 27 items, including among other things, all emails, telephone records and correspondence from any CFTC official or employee relating to Vincent McCrudden or any of his entities; access to depose CFTC officials; copies of the Commodity Exchange Act, the Food, Conservation and Energy Act of 2008, the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, the Securities and Exchange Commission rules and regulations, National Futures Association by-laws, FINRA's rules and regulations; all cases investigated, adjudicated or settled by the CFTC which involved alleged violations of registration; access to depose National Futures Association employees relating to McCrudden or any of his entities; all emails, telephone records correspondences, etc. by the SEC, FINRA, NFA, and CFTC containing any references to defendant McCrudden, his family, MAAM, ALNBRI, HF, LP or HF II, LP; access to depose certain lawyers; and access to depose officials and employees at Interactive Brokers. *Id*. McCrudden pointed out that the Court would have to coordinate with the U.S. Marshal's office and the prison, including "some sort of guarantee that privileged, private information will be stored securely and safely for me." *Id*. According to McCrudden, he was sharing a dorm with 15 other inmates and was given only one hour of law library usage a day and one hour of

computer time every two weeks and that he needed to be able to access resources "to mount even a basic defense, never mind a defense against the CFTC who virtually have unlimited manpower and resources." *Id.* In response to that letter, Judge Hurley stated in a January 12, 2012 Electronic Order that to the extent the letter contained discovery requests, the parties were directed to proceed in the manner outlined in this Court's December 15, 2011 Scheduling Order.

Defendant McCrudden wrote to Judge Hurley on January 25, 2012 and raised several arguments in response to the discovery demands he had received from the Commission. DE 49. Among other things, McCrudden stated that (1) the CFTC was not entitled to documents and responses from January 1, 1995 and that the defendants would provide "pertinent information involving the relevant period from on or about May 2008 until on or about September 2008;" (2) the CFTC was already in possession of all the information it had requested based on the multiple subpoenas it had served in 2009; and (3) the case could not be defended legally from prison. *Id.* Notwithstanding those arguments, defendant McCrudden provided responses to ten interrogatories and three document requests. Many of these responses stated only that "the defendants are not in 'control, custody or possession' of this request due to incarceration." *Id.*

On February 7, 2012, counsel for the CFTC filed a letter asking Judge Hurley for a pre-motion conference in order to move for entry of default against the Corporate Defendants since the corporate entities had not obtained counsel and the stay previously imposed had long since expired. *See* DE 46.

Judge Hurley issued an Order on February 13, 2012 [DE 47] holding that because a corporation cannot appear in federal court except by a licensed attorney, the motion to dismiss the Complaint against MAAM submitted by *pro se* defendant McCrudden, who is not an

attorney, could not be considered by the Court. The motion was consequently stricken from the docket. Judge Hurley also granted CFTC's request to renew its application for entry of default against the Corporate Defendants and directed the Commission's counsel to file an amended motion seeking the entry of default judgment as against MAAM and Alnbri on or before February 28, 2012. *Id.* As to defendant McCrudden's previous application to have the Complaint against him personally dismissed, Judge Hurley set a schedule for the CFTC to file opposition papers and for McCrudden to file a reply. *Id.* In addition, McCrudden's request for appointment of counsel was found to be not warranted and his request for a stay of proceedings until his prison sentence is completed was denied. *Id.*

The Commission filed its request for a Certificate of Default with the Clerk's Office on February 21, 2012. *See* DE 50. The entry of default as to the two Corporate Defendants was noted in the record on March 5, 2012. Meanwhile, defendant McCrudden sent a letter dated February 24, 2012 [DE 51] setting forth his general objections to Judge Hurley's rulings. Judge Hurley construed that letter as a motion for recusal and directed defendant McCrudden to file a letter providing certain information to support his request by March 12, 2012. The Commission was directed to file a response to the recusal application, if it chose to do so, by March 19, 2012. *See* DE 52.

This Court conducted a status conference with the parties by telephone on February 28, 2012. *See* DE 54. Some discussion took place with defendant McCrudden regarding his responses to the CFTC's discovery demands. It was apparent that the parties had not met and conferred themselves to try to resolve objections to discovery responses as required under Local Civil Rule 37.3. Therefore, this Court directed the parties to do so. Once that was accomplished,

the parties had until April 30, 2012 to file letter motions seeking Court intervention as to any issues which remained unresolved. Opposition to such motions had to be submitted within two weeks of the motions being filed. *Id.* The Court also spent time discussing defendant McCrudden's references to attorney-client privilege and the defense of advice of counsel. *Id*. Depositions were stayed pending the outcome of Judge Hurley's decision on the defendants' motion to dismiss. *Id.*

Defendant McCrudden submitted another motion to dismiss [DE 58] on March 8, 2012. That same day, McCrudden also filed a document entitled "Opposition For Entry of Default." DE 59. In that document, McCrudden asserts that he has "consistently responded and complied with the courts [*sic*] direction and requests since receiving news of the suit on or about December 1, 2010." *Id*. He reiterated that granting a default judgment in the amount of $58 million "in an alleged technical rules violation is 'unconscionable.'" *Id*. Pointing to several specific cases, McCrudden noted that courts ordinarily disfavor defaults and that cases should be decided on their merits. *Id*. Four days later, McCrudden submitted a letter [DE 60] stating that his February 24, 2012 letter was not a motion seeking Judge Hurley's recusal. The Commission opposed the motion to set aside the default on April 30, 2012. *See* DE 66.

The CFTC opposed McCrudden's motion to dismiss on March 13, 2012. *See* DE 56. In a letter to Judge Hurley dated April 6, 2012 [DE 63], defendant McCrudden stated that he was responding to the Commission and that he had complied with the Federal Rules and acted in good faith in answering the Commission's questions which were served on January 11, 2012. In turn, he noted that the CFTC was asked for 27 items and "refused to answer a single one." *Id*. According to McCrudden, if anyone is in violation of the Federal Rules and should be compelled

to comply with Court orders, it is the CFTC. He stated that the defendants are "being asked unfairly to defend the sole work product of retained, third-party, independent lawyers and law firms and not violations the defendant knowingly, willingly or recklessly violated in bad faith." *Id*.

On April 23, 2012, the CFTC filed a motion to compel, stating that it had attempted to meet and confer with defendant McCrudden by letter, but that the defendant had failed to respond as of that date. *See* DE 65. The Commission was seeking to obtain responsive information from McCrudden beyond just the repeated statement that the defendants are "not in 'control, custody, or possession' of this request due to incarceration." The motion was directed to Interrogatory Nos. 1-10 and Document Request Nos. 1-3. Counsel for the Commission pointed out that during a recent telephone conference, the Court urged defendant McCrudden to utilize a family member or friend or other agent, or perhaps his criminal defense attorney to assist him in collecting the documents while he was incarcerated. *Id*. The Commission requested information on the location of the documents and information they were seeking as well as the identification of a person with whom the Commission could coordinate its efforts. *Id*.

Some five months later, defendant McCrudden notified the Court on September 11, 2012 that he had not been receiving any correspondence from the CFTC or the Court despite the fact that he had sent in a change of address in May 2012. DE 70. McCrudden had been moved twice in the interim and was then at the Federal Correctional Center in Fort Dix, New Jersey. *Id*. On September 17, 2012, McCrudden filed a "Supplemental Motion To Dismiss Plaintiff's Complaint." DE 74. He stated he was filing that supplemental brief in support of his pending motion to dismiss. *Id*. The two-page document contained citations to various federal cases. *Id*.

The CFTC requested a pre-motion conference on September 24, 2012 seeking to strike that supplemental motion. DE 75. The motion to strike was later dismissed by Judge Hurley. *See* DE 79 at 5.

On December 11, 2012, the Clerk's Office received a motion for summary judgment from Defendant McCrudden, pursuant to Rule 56(c), seeking to dismiss the Complaint. *See* DE 77. By that date, McCrudden had been released from prison. The Commission filed a letter request [DE 78] to Judge Hurley seeking a pre-motion conference to move to strike that motion as well. On January 11, 2013, Judge Hurley issued an Order denying McCrudden's four separate motions to dismiss the Complaint as against him. *See* DE 79. In addition, Judge Hurley denied the CFTC's request for a pre-motion conference seeking to strike McCrudden's purported motion for summary judgment, which Judge Hurley also denied. *Id.* Regarding McCrudden's motion to vacate the Clerk's Entry of Default as to the Corporate Defendants, Judge Hurley reiterated his previous finding that a non-attorney cannot make a motion on behalf of a corporate defendant who is not represented by counsel. *Id.* at 15. As such, defendant McCrudden's motion made on behalf of Alnbri and MAAM to vacate the Entry of Default as against them was denied. *Id.* at 16. Further, Judge Hurley granted the Commission leave to move for default judgment as against Alnbri and MAAM, pursuant to Rule 55(b). *Id.*

### 3. *The Course of Discovery in 2013*

Defendant McCrudden submitted a February 5, 2013 "Request for Pro Bono Counsel." DE 81. In his letter, McCrudden stated that he had been released from prison, had no hope for employment as a convicted felon and had no money to pay an attorney. *Id.* Approximately two weeks later, an attorney named Jose Muniz, whose office is located in Manhattan, filed on ECF a

Notice of Appearance dated February 21, 2013. In that Notice, Attorney Muniz stated "enter my appearance as counsel in this case for Vincent Patrick McCrudden." DE 82. Six days later, Attorney Muniz filed a Notice of Appearance on behalf of Corporate Defendants Alnbri and MAAM. *See* DE 83. McCrudden sent a letter to Judge Hurley on February 24, 2015 clarifying that Attorney Muniz was representing only the Corporate Defendants and that McCrudden would still be representing himself *pro se*. DE 84.

This Court thereafter issued an Order dated March 19, 2013 [DE 85] granting, in part, and denying, in part, the CFTC's motion to compel [DE 65] further discovery responses from Defendant McCrudden. The Court held that since McCrudden was no longer incarcerated, the objections he had previously raised to providing full responses to the discovery demands based on his incarceration were no longer valid. Defendant McCrudden was therefore directed to answer fully and completely Interrogatory Nos. 2, 6 and 7. The Court further ordered as follows: (1) to the extent that McCrudden could identify any documents that did not implicate attorney-client communications, he was directed to do so in response to Interrogatory No. 1; (2) as to the documents he believed were covered by the attorney-client privilege, McCrudden was required to produce a privilege log, pursuant to Fed. R. Civ. P. 26(b)(5)(A), within 14 days and otherwise to identify and produce the non-privileged documents; (3) McCrudden was directed to answer Interrogatory No. 3 completely (regarding his assertion that he was denied the right to register by the NFA in February 2005) based on the Court's finding that the information requested is not a matter of public record as McCrudden contended and provide the response within 14 days; (4) McCrudden did not need to provide further information in response to Interrogatory No. 4 (*i.e.*, that McCrudden never acted as an "Associated Person") since plaintiff's counsel can explore this

topic at defendant's deposition; (5) McCrudden is to amend his answer to Interrogatory No. 5 (regarding his attempts to register MAAM) and provide a complete, substantive response within 14 days; (6) defendant's objections to Interrogatory Nos. 8, 9 and 10 (seeking information concerning McCrudden's duties with Alnbri, HFII and MAAM) are overruled and McCrudden is directed to provide substantive and complete responses within 14 days.

On March 28, 2013, the Clerk's Office received a letter from Defendant McCrudden dated March 20, 2013 at the top (with the date "3/22/13" next to the signature at the bottom of page 6), addressed to both Judge Hurley and the undersigned. Aside from being laced with profanities and derogatory comments, the letter stated at one point that "I will re-answer the interrogatories to the best of my abilities, but I can see what you are trying to do. You are trying to get me in a position of non-compliance so you can award this case to the CFTC before it gets to a jury trial . . . I want you to compel the CFTC to answer my interrogatories and to produce necessary documentation." *See* DE 88 at 5 and 7.

That same day, March 28, 2013, the Clerk's Office posted another submission from defendant McCrudden, dated March 23, 2013, addressed to both Judge Hurley and the undersigned, entitled "Violation of Title 44 § 3501 Paperwork Reduction Act." *See* DE 89. After another series of profanities, McCrudden accused the SEC and the CFTC of having violated the Paperwork Reduction Act in that they "subpoenaed all the information currently being collected for a fourth time. When is this considered harassment?" *Id.* Section II of that submission is entitled "Response to Order Dated March 19, 2013." There, defendant McCrudden provides other answers to CFTC's Interrogatory Nos. 1, 3, 5, 8, 9 and 10.

In response to Interrogatory No. 1 (identify all attempts to register with the NFA/CFTC,

etc.), Defendant McCrudden objects to the question as being too broad, but then cites some specific dates from the NFA's public record of McCrudden's registration, followed by information which he states is published on the NFA's website. *Id.* The response further asserts that Alnbri was formed in 2008, that it has an NFA ID number and that it is listed and published on NFA's website. *Id.* McCrudden adds that

> MAAM retained a law firm, Sadis and Goldberg to comply with all laws, rules, disclosures and regulations. Alnbri retained Edwards, Angel, Palmer and Dodge and Pillsbury Winthrop to comply with all laws, rules, disclosures, and regulations. Additionally, appeals were done by law firms Kelley Drye and Louis Burke. All firms were paid handsomely by MAAM and Alnbri. Any documentation as regards to compliance with the NFA/CFTC would have been written, established, authored by the law firms and the agencies would be in possession of those correspondences. I know at least Pillsbury Winthrop was heavily subpoenaed by the SEC and CFTC and was fully compliant with all non-privileged requests.

*Id.* at 3-4.

As to Interrogatory No. 3 which asked the defendant to state the facts on which he was denied the right to register by the NFA in February 2005, McCrudden responded that he had already answered this question and had "written extensively about the role the CFTC played with the corrupt NFA officials" who "colluded and charged a 'catch all' provision of the CEA, 8(a)(3)(m), 'for good cause', to deny registration." *Id.* at 4. Interrogatory No. 5 asked McCrudden to identify all attempts to register MAAM, to which McCrudden essentially referred the CFTC to the law firms responsible for getting MAAM registered.

In response to Interrogatories 8, 9 and 10 which asked McCrudden to identify with specificity all of his duties with respect to Alnbri, Hybrid Fund II and MAAM, McCrudden stated that he had already answered the question. He further noted that he was answering in order to

avoid a technical violation or default and was therefore answering "grudgingly" against his will. *Id*. at 5. As to MAAM, McCrudden responded that he was the CEO. *Id*. He went on to state that "I ran operations, traded, made decisions, ordered paper clips, staples, copy paper, lunch and hired professionals to do their . . . jobs in accounting, legal and regulatory compliance." *Id*. McCrudden referenced the same response for Alnbri. As to Hybrid Fund II, LP, McCrudden responded that it was a limited partnership and that he once again was answering grudgingly against his will. He stated that "MAAM and Alnbri were General Partners of the fund. Alnbri was a limited partner as well in the fund during the relevant period of May 2008 to September 2008." *Id*.

In response to the Court's directive to provide a privilege log for any documents defendant was withholding on the grounds of privilege, McCrudden stated that the request was too broad and added that privileged information is "immune totally from discovery." *Id*. at 6. McCrudden then asserted that "ALL correspondence with the following law firms involving the registration process of Defendants Vincent McCrudden, MAAM and Alnbri are privileged. Period. . . ." *Id*. Concluding the correspondence, McCrudden stated that

> ... I have always been compliant and have answered to the best of my abilities and for the most part, without legal counsel advice. The court cannot say I am in contempt, acted in bad faith, or not in best interests of myself, or the companies I once represented.

*Id*.

On April 2, 2013, Judge Hurley issued an Electronic Order directing Attorney Jose Muniz to submit a letter to the Court clarifying whether he was representing Vincent McCrudden. The Order went on to state that if Attorney Muniz wished to move to withdraw as counsel for

defendant McCrudden, he was directed to do so forthwith. Attorney Muniz filed a letter to Judge Hurley on April 12, 2013 stating that the Notice of Appearance which he had filed on February 21, 2013 was only for purposes of representing the Corporate Defendants. *See* DE 90. According to Muniz, defendant McCrudden would continue to appear in a *pro se* capacity. *Id*. He added that defendant McCrudden was short of funds and could not retain private counsel at that time. *Id*. The letter gives no indication that Muniz was withdrawing from his representation of the Corporate Defendants.[2] *Id*.

In answer to this Court's Order of March 19, 2013 and defendant McCrudden's March 23, 2013 response, the CFTC filed a letter motion for discovery sanctions on April 23, 2013. *See* DE 91. In addition to objecting to McCrudden's "profanity-laced, inappropriate commentary," the Commission argued that McCrudden's substantive responses to its discovery demands were "generally insufficient and non-responsive to the Court's direction." *Id*. After providing an individual assessment of each of the specific demands at issue, the Commission concluded that the Court-ordered responses of McCrudden were nothing more than "profane diatribes" and that McCrudden made no genuine attempt to respond to the requests or to produce the documents the Court directed. Counsel for the Commission maintained that Defendant McCrudden's "signature" operated as a certification of the responses under Rule 26(g). As such, the CFTC contended that the certification violated the obligations of Rule 26(1)(B)(2) in that the

---

[2]     The Court points out that although the docket sheet reflects the phrase "Terminated: 04/12/2013" under Attorney Muniz's name and address, there is no correspondence from Attorney Muniz affirmatively stating that he is no longer representing the Corporate Defendants or is seeking to withdraw from their representation. Likewise, there is no statement from McCrudden to this effect. Nor is there any Order or other entry from the Court granting any motion to be relieved as counsel for the Corporate Defendants, nor any indication that the Court terminated the representation by Jose Muniz.

responses were "interposed to harass and cause unnecessary delay and expense of litigation." *Id*. Counsel asked for a hearing date to address the "inadequate and inflammatory discovery responses and the appropriate sanction." *Id*.

In response to the April 23, 2013 CFTC motion [DE 91], defendant McCrudden filed a "Request for Dismissal of Counsel" dated May 1, 2013. DE 95. In his submission, McCrudden pointed out that he had commenced a lawsuit against the CFTC and others in the District of Columbia on April 10, 2013 in which CFTC counsel James H. Holl and Kevin Webb were named as defendants. *Id*. McCrudden stated that "all of these CFTC lawyers will be called upon to be deposed and eventually testify in that case." *Id*. On that basis, McCrudden stated "I demand you dismiss Holl and Webb from this case." *Id*. As to the CFTC's contention that his discovery responses were insufficient, McCrudden stated that "I am responding to every single Court and CFTC request and doing so in a timely manner, in good faith, and best efforts even when I was incarcerated for two . . . years." *Id*. He added that he has no reason to delay the case and wishes to get to depositions and a jury trial as quickly as possible. *Id*. According to McCrudden, he "answered to the best of my abilities all the interrogatories, not once, but twice now. The CFTC and Holl have not answered one question, nor provided one ounce of discovery." *Id*. In concluding his submission*,* McCrudden stated that his request for pro bono counsel was not "moot" and that the Court should appoint counsel for him. *Id*.

In a letter dated October 16, 2013 addressed to Judge Hurley, defendant McCrudden noted, among other things, that he had been approached by counsel for the CFTC and asked if he would oppose the Commission's request for a stay of this action.  DE 98.  McCrudden responded that he would oppose that request and stated his desire that this case move forward.  *Id*.  He  once again demanded that Judge Hurley recuse himself immediately.  *Id*.  By Order dated October 22, 2013 [DE 99], Judge Hurley denied Defendant McCrudden's motions for recusal [DE 88, 94].  In addition, Judge Hurley reminded McCrudden that all matters concerning discovery must be addressed to the undersigned in the first instance.  DE 99.

Counsel for the CFTC filed a letter motion on October 30, 2013 requesting an Order deeming admitted the Requests for Admission ("RFAs") which the Commission had previously served on defendant McCrudden.  *See* DE 102.  Four RFAs were served on April 23, 2013, some six months earlier.  *Id*.  Counsel for the Commission pointed out that defendant McCrudden had previously stated in an email (attached to the CFTC's motion as Exhibit B) that "any discovery requests with me directly will be met with silence and I will only respond to court orders." DE 102, Ex. B.  McCrudden ignored the RFAs, according to the CFTC, and never provided a response.  In that context, and relying on Fed. R. Civ. P. 36(a)(3), the CFTC moved to have those RFAs deemed admitted.  *Id.*   The CFTC's motion was cc'd to defendant McCrudden and to attorney Jose Muniz.

The Court takes note that in the previous April 4, 2013 e-mail attached as Ex. B to the CFTC's motion to deem the RFAs admitted, defendant McCrudden also set forth his position with regard to the representation of the Corporate Defendants.  Specifically, McCrudden stated the following:

[t]here was a mistake when the attorney filed representation of the companies, and instead, filed that they were representing me personally. I have corrected that with the courts as well as the attorney, Mr. Muniz corrected that. So, no they are not withdrawing. . . .

Yes, other companies in default and how long have they been in default, that is the million-dollar question. If indeed they are in default, I was not under that impression. I have told my attorneys that I was confused as to why the CFTC would give me a week when I got out of jail to get an attorney for the company's, if they were as you say already in default?

So, in short, if they are in default as you say, then we will be filing a motion to remove them from default. We believe there is good case law on this and the same protections why you couldn't find me in default as protected by FRCP over the last two years, should be given to the single managing member firms as well. So, I will send you a copy of that motion when it's done.

As far as discovery, I have complied with all discovery requests. I have asked Tomlinson to compel the CFTC to provide more discovery and will await her answer. She has indicated that depositions will commence with after discovery. Any discovery request with me directly will be met with silence and I will only respond to court orders. It is not that I am not being cooperative or compliant, it's just that I believe you have everything you need to continue with your complaint.

DE 102, Ex. B.

In responding to defendant McCrudden's assertion that Attorneys Holl and Webb should be removed from the case – a response called for by Judge Hurley in his December 11, 2013 Order[3] – the CFTC noted that the instant case arises from a "purely regulatory action." DE 106.

_____

[3]        In his December 11, 2013 Memorandum and Opinion [DE 104], Judge Hurley ruled that (1) defendant McCrudden's application for appointment of counsel was denied and McCrudden was given a deadline of January 15, 2014 to either obtain counsel or advise Judge Hurley that he would be proceeding pro se; (2) the CFTC was to respond to McCrudden's second letter of May 1, 2013 seeking the removal of attorneys Holl and Webb as counsel for the CFTC on the grounds that both attorneys were now named defendants in a civil proceeding brought by McCrudden in the District of Columbia; (3) any future communications from defendant McCrudden which gratuitously included obscenities would be denied without prejudice to their renewal if presented in a civilized format.

As such, McCrudden's summary demand for the removal of Commission counsel lacked any legal or factual basis according to the CFTC. *Id*. Counsel for the Commission urged Judge Hurley to reject McCrudden's request to remove the Commission's counsel and further requested that the case proceed. *Id*. In reply, defendant McCrudden reiterated that the CFTC should be compelled to hire outside attorneys for the case since Holl and Webb are named in the Federal Tort Claims Act litigation which McCrudden commenced against the CFTC in the Southern District of New York. *See* DE 111.

On January 6, 2014, this Court issued a Decision and Order denying the CFTC's motion for sanctions, finding that defendant McCrudden had sufficiently answered certain interrogatories and that plaintiff's counsel could obtain any further information he needed at McCrudden's deposition. *See* DE 108. However, there were other discovery demands for which the Court directed McCrudden to provide additional information, noting that the Court was giving him one final opportunity to comply with his discovery obligations. *Id*. In particular, defendant McCrudden was directed to provide complete and substantive responses to plaintiff's Document Request Nos. 1, 2 and 3 which sought documents reflecting McCrudden's attempts to register with the NSA/CFTC. *Id*. Further, McCrudden was cautioned that if he was asserting "advice of counsel" as a defense in the case, as he appeared to be doing, then he effectively was waving attorney-client privilege as a basis for withholding documents. The Court pointed out that the defendant could not use the "advice of counsel" defense as both a sword and a shield to prevent access to documents which support his defense. *Id*. McCrudden was directed to advise the Court

within 15 days specifically whether he was asserting or not asserting this defense.[4]   The Court also stated that if defendant McCrudden intended to assert attorney-client privilege, he would be required under the Federal Rules to also produce a privilege log.

As to his own discovery requests, defendant McCrudden maintained that the CFTC had not answered one question or provided a single document to him during the entire course of discovery.  However, McCrudden never provided the Court with a copy of the discovery responses which the CFTC confirmed it had served on him in February 2012.[5]   In light of the circumstances, the Court directed counsel for the CFTC to forward a copy of the Commission's discovery responses to the Court.  DE 108.  The January 6, 2014 Order went on to state that the Court would address the arguments raised by McCrudden about the materials he claims he had not received once the Court had actually reviewed the CFTC's responses.  *Id.*  The matter of depositions was deferred until these issues were resolved.

### 4.     *Activity During 2014*

On March 13, 2014, counsel for the CFTC filed a letter to this Court seeking a pre–motion conference for purposes of requesting "discovery sanctions and/or entry of default" against defendants Vincent McCrudden, MAAM and Alnbri.  *See* DE 112.   Relying on this Court's Orders of December 11, 2013 [DE 104] and January 6, 2014 [DE 108] as to defendant McCrudden's "final opportunity to comply with his discovery obligations," counsel reported that

---

[4]     Judge Hurley brought this to Defendant McCrudden's attention in January 2013 when he rendered his decision denying McCrudden's motion to dismiss the Complaint.

[5]     At the Court's directive, counsel for the Commission provided the Court with a copy of its "Responses to Interrogatories and Requests for Production of Documents" which were sent to Defendant McCrudden by mail in February 2012.

McCrudden did not provide the Commission with any further discovery materials and the February 11, 2014 deadline set by the Court had passed a month earlier. DE 112. Counsel also pointed to Judge Hurley's observation in his December 11, 2013 Memorandum and Opinion [DE 104] that defendant McCrudden had yet to file an Answer in this action. In a January 6, 2014 Decision and Order, this Court also took note of the lack of a responsive pleading by defendant MAAM. DE 108, n. 2. Likewise, the Court cautioned defendant McCrudden that any failure to comply with the directives in the January 6, 2014 Order would result in this Court recommending to Judge Hurley that McCrudden's responses be stricken and that a default be issued in the record against him. DE 108 at 11-12.

In response to the CFTC's motion to set a pre-motion conference, defendant McCrudden submitted a letter dated March 13, 2014 asserting that a pre–motion conference was not necessary. DE 113. McCrudden enclosed a letter which says he sent out on January 9, 2014 (and apparently was not posted to ECF) in response to the Court's January 6, 2014 Order. *Id*. Counsel for the CFTC acknowledged that his office had received the correspondence from defendant McCrudden by email on January 8, 2014. McCrudden also stated that he had been awaiting the Court's decision "as to why the plaintiff has not answered ANY of their interrogatories." *Id*. According to McCrudden, there was no longer a need for a pre-motion conference because he had been compliant with the Court's directives, as evidenced by his January 8, 2014 letter to the CFTC. *Id.* McCrudden's January 8, 2014 letter [DE 114] contains a discussion of attorney-client privilege and the law firms McCrudden hired to comply with all applicable state, federal and regulatory rules as to Alnbri and Hybrid Fund II. The letter goes on to state that McCrudden was reserving his right not to waive attorney-client privilege. DE 114. He added that he did not author the

documentation and can only be called on as a witness as to "who authored the documentation and what efforts were made to comply with all laws." *Id.* As to the defense of "advice of counsel," McCrudden noted that

> the defendant never has stated the reliance on counsel defense and only Judge Tomlinson at the nudging of the plaintiff, the CFTC, is stating that issue and pressing that argument which was never stated by the defendant and only arrived at by Judge Tomlinson in a conference call. . . .

> I have enclosed an affidavit that I have never asserted an "advice of counsel" defense and therefore do not have to provide any logs or any communications with any attorneys. . . .

*Id.*

Within the January 8, 2014 letter previously sent and received by the Commission but not the Court, defendant McCrudden reiterated that the CFTC had everything it needed to proceed with the case based on the documents the Commission had obtained by subpoena. In particular, McCrudden asserted that

> [s]ince moving out of my offices in 2010, and then moving to Singapore, and then being arrested and imprisoned for 2.5 years, the Court is placing an undue burden and simply harassing the defendant for information already in custody and control of the Plaintiff. The Court is compelling the defendant to produce documentation that was sent to the Plaintiff in 2008.

*Id.* However, McCrudden did attach as Exhibit A to his letter supplemental responses to the Commission's Interrogatories. McCrudden also attached as Exhibit B a list of "New Interrogatories" for the Commission. He further pointed out that "[a]s of March 2011, Defendants Managed Accounts Asset Management, LLC and Alnbri Management, LLC have been ruled in default by the Court for failure to obtain counsel. Subsequently, defendant McCrudden was

falsely lead to believe that obtaining counsel for the entities would remove the companies from default. . . ." *Id.* On that basis, McCrudden stated his belief that the only questions that should be answered should be related to the specific charges against him as a "control person." *Id.*

On July 23, 2014, counsel for the Commission submitted a letter to Judge Hurley requesting a pre-motion conference "regarding Defendant McCrudden's default." DE 121. Counsel stated that McCrudden had served the Commission by email with a "Memorandum of Law in Support of Motion for Jury Trial." *Id.* In a subsequent telephone call with defendant McCrudden, counsel for the Commission advised McCrudden that a pre-motion conference was required with regard to that motion. CFTC's counsel asked for a status conference to address "the Commission's desire to seek entry of default against Defendant McCrudden as well as to discuss McCrudden's motion for a jury trial." *Id.* McCrudden's "Motion for Jury Trial" was entered on the docket on July 28, 2014. *See* DE 122.

Defendant McCrudden submitted a letter to Judge Hurley dated July 24, 2014 which he stated was a response to the CFTC's letter of July 23, 2014. DE 123. In that letter, McCrudden states that there are "outstanding motions and unanswered interrogatories." *Id.* As to the CFTC's assertions, McCrudden responded as follows:

> Secondly, the CFTC writes in their letter that "Defendant McCrudden has not filed an answer". Let the record show that the Defendant has answered not once, but twice. The first answer was filed on March 14, 2014 (Document 113), and an identical copy was filed on March 20, 2014 (Document 116). The Defendant filed proof that he originally answered immediately after Judge Tomlinson's order of January 8, 2014 (Document 108). Therefore, the defendant is and has been compliant with all orders and scheduling and the Plaintiff CFTC's request again to call for a conference to discuss "default" is completely out of bounds and warrantless.

> Thirdly, the Plaintiff CFTC writes that entities MAAM and Alnbri are already in default. The Defendant doesn't know if they are or they aren't? The Plaintiff CFTC stated way back in February 2013 that if the entities retained counsel within a week, they would not be in default. On February 27, 2013, Attorney José Muniz filed a notice of appearance for MAAM and Alnbri (Document 83).

DE 123. McCrudden also complained that the CFTC had not answered the 12 interrogatories he served or even addressed his requests. *Id.*

By Electronic Order dated July 30, 2014, Judge Hurley directed the CFTC to respond to defendant McCrudden's Memorandum in Support of Motion for a Jury Trial by August 17, 2014. The CFTC did so on August 15, 2014, stating that it had no objection to a jury trial, but that "certain issues should be resolved prior to a ruling upon McCrudden's request." DE 124. Specifically, counsel for the Commission stated that "the CFTC respectfully seeks resolution of the outstanding questions surrounding the default status of each of the named defendants." *Id.* Counsel went on to note the following:

> Regarding the corporate defendants, Managed Accounts Asset Management, LLC (MAAM) and Alnbri Management, LLC (Alnbri), the Commission sought entry of default against them collectively, as they were not represented by counsel, as required. An apparent interim appearance indicated that MAAM and Alnbri may have legal representation, but that fact remains unclear as no requests have been made to set aside the defaults and "counsel" for the corporations is not responsive. As for McCrudden, while the individual defendant has actively litigated this matter, the commission cannot discern from the docket an actual "answer" as having been filed – thus placing the case at issue.

*Id.*

Judge Hurley issued a Memorandum and Order on September 18, 2014 denying defendant McCrudden's application to have CFTC counsel Holl and Webb dismissed from the case.

*See* DE 126.  In addition, Judge Hurley granted McCrudden's motion for a jury trial.  *Id.*

On October 20, 2014, before the foregoing issues were resolved, counsel for the CFTC petitioned the Clerk of the Court to note in the record the default of individual defendant Vincent McCrudden, pursuant to Fed. R. Civ. P. 55(a), asserting that McCrudden had not filed an answer in the case.  DE 128.  The Clerk of the Court noted the default in the docket that same day.  *See* DE 129.  Defendant McCrudden immediately protested the entry of the certificate of default in an "Affirmation Response" dated October 21, 2014.  DE 130.  In doing so, McCrudden stated that he had "certainly appeared and certainly defended  this complaint and the Defendant was confused as to how anyone could rule otherwise."  *Id*.  McCrudden also referenced the contents of the Affidavit of James H. Holl, Chief Trial Attorney of the Division of Enforcement of the CFTC, which accompanied the CFTC's request for a certificate of default.  *See* DE 128-1.  In particular, McCrudden referred to Attorney Holl's statement that McCrudden filed four separate motions to dismiss the complaint, all of which were denied.  DE 130.  McCrudden states that he called the Pro Se Office to inquire why he wasn't permitted to submit an opposition to the request for entry of the notation of default as he had been advised by that office just a few hours before, prior to the Clerk's Office acting on the request.  *Id.*  He went on to state that

> courts generally agree that a default judgment is an extreme remedy only
> to use in extreme cases when the defendant fails to answer, appear or
> defend the case.  That is far from the facts of this case as a defendant has
> fought tooth and nail to defend this case. The defendant has been
> compliant with all orders and direction of the court and has always acted
> in good faith.

*Id*.  In closing his "Information Response," McCrudden urged that the "court must overturn the entry of the default by the Clerk of the Court.  Furthermore, an investigation needs to take place

by an independent authority as to how Mr. Palmer and Ms. Rios granted a default so quickly, if they even looked at the docket . . ." *Id.*

McCrudden followed up with a letter to the Clerk of the Court on November 4, 2014, expressing his concern over the speed of the entry of default against him in light of the fact that he believed he was not in default based on his defense of the case over several years. DE 131. He asked for an affidavit from the Clerk regarding what steps the Clerk's Office took to investigate the matter before entering the notation of default in the record. *Id.* A similar letter was sent to the Pro Se Office. *See* DE 133.

On November 13, 2014, counsel for the CFTC filed a letter to Judge Hurley asking for a pre-motion conference for purposes of making a motion for entry of default judgment against the Corporate Defendants. DE 132. Counsel noted that a default had previously been entered against the Corporate Defendants. *Id.* In addition to pointing out that the defendants had not filed an Answer, counsel argued that their default was willful because the Corporate Defendants failed to retain counsel. *Id.* Counsel for the CFTC added that the Commission also intended to bring a separate motion for default judgment "addressing the unique circumstances of the third defendant in this litigation, Vincent McCrudden." *Id.* Judge Hurley then referred the CFTC's application to this Court. *See* Electronic Order of November 14, 2014. There was no further correspondence or applications submitted thereafter by defendant McCrudden, except for a notice to the Court that his address had changed.[6] DE 136.

---

[6] The Court points out that after the last correspondence from defendant McCrudden himself, a Notice of Appearance was filed by Abigail C. Field, Esq., on May 19, 2015, stating that she represents both the Corporate Defendants as well as Vincent McCrudden. *See* DE 137. The Court discusses Attorney Field's entry into the case later in this Report and Recommendation.

## III.   DISCUSSION

In addressing the referral by Judge Hurley of the CFTC's request to proceed with a motion for entry of default judgment, this Court needs to examine  –  having now laid out the lengthy chronology of this case  –  the status of the certificates of default which have been entered in the record.  The CFTC takes the position that it should be permitted to move forward with motions for entry of default judgment against both the Corporate Defendants and against Vincent McCrudden individually.  To date, in response to the CFTC's correspondence to the Court as well as in response to communications made directly to him, defendant McCrudden has insisted that (1) the Corporate Defendants are not in default because he hired counsel to represent them, namely, Attorney Muniz, and (2) he individually is not in default because he has vigorously defended himself in this lawsuit from the time he was served with the Summons and Complaint.

The CFTC filed its Complaint on December 1, 2010.   The Complaint asserts violations of the Commodity Exchange Act.  Generally, the CFTC charges that  the commodity pool Hybrid Fund II, LP was operated by commodity pool operators ("CPOs") which were neither registered as CPOs with the U.S. Commodity Futures Trading Commission as required under the Act, nor validly exempt from the requirement to register as CPOs.  The Complaint goes on to state that although MAAM filed a notice of exemption from registration with the Commission, the Hybrid Fund II was not operated in accordance with the exemption during the relevant period, thereby rendering MAAM's exemption invalid and requiring it to be registered as a CPO.  As to Alnbri, the Complaint alleges that it never filed a notice of exemption with the Commission and consequently was never authorized to operate the Hybrid Fund II under any exemption from registration.  According to the CFTC, during the relevant period, MAAM and/or Alnbri, "as

unregistered CPOs of Hybrid Fund II, directed the buying and selling of exchange traded commodity futures contracts on behalf of Hybrid Fund II." Complaint ¶ 1. The Commission also asserts that defendant Vincent Patrick McCrudden "acted as an associated person ("AP") of MAAM and Alnbri without being registered as such, while soliciting funds for participation in the pool from prospective and actual participants and/or supervising others so engaged." *Id.* ¶ 2.

MAAM was served with the Complaint through the New York State Secretary of State on December 10, 2010. Likewise, Alnbri was served in the same manner on December 10, 2010. The Corporate Defendants had until December 31, 2010 to answer or otherwise move with respect to the Complaint. Individual defendant Vincent McCrudden was served on February 3, 2011. He had until February 24, 2011 to answer or otherwise move with respect to the Complaint.

## A. Applicable Law

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend ... the clerk shall enter the party's default." Fed. R. Civ. P. 55(a). A court's decision to enter a default against a defendant, however, "does not by definition entitle plaintiffs to an entry of default judgment." *Bricklayers and Allied Craftworkers Local 2, Albany N.Y. Pension Fund v. Moulton Masonry*, 779 F.3d 182,187 (2d Cir. 2015); *City of New York v.Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011). There is no question here that certificates of default have been entered against all of the defendants – the only question is whether they have been properly entered so that the CFTC should be permitted to proceed with its motions for entry of default judgment. The record of communications here unequivocally reflects defendant McCrudden's position that the defaults were not properly entered. If this Court determines that one or both of the certificates

of default were not properly entered, then one or both need to be set aside. On the other hand, if the certificates were properly entered, then based on the particular course of conduct of this case and the arguments raised by defendant McCrudden, the Court believes it would be necessary to further determine whether there is a basis to set aside or vacate either or both of those defaults.

Once an entry of default has been made, the defendant may move to set aside the default for "good cause shown." Fed. R. Civ. P. 55(c). The Court initially notes that because there have been entries of default by the Clerk of the Court in the instant matter, but no entry of default judgment at this time, the CFTC's application must be evaluated pursuant to Rule 55(c), rather than the more rigorous standard of Rule 60(b), and the defendants must establish that there is good cause to set aside the default. *See Allen v. Barnes*, No. 08–CV–3832, 2009 WL 331243, at *2 n. 1 (E.D.N.Y. Feb. 9, 2009); *LaBarbera v. MMK Trucking, Inc.*, CV 06–6643, 2008 WL 508630, at *1 (E.D.N.Y. Feb. 25, 2008).

Further, Rule 55(c) provides that a "court may set aside an entry of default for good cause." "Because 'good cause' is undefined, the Circuit has established three criteria that a court must assess in order to decide whether to relieve a party from such an entry of default – (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Coach Inc. v. O'Brien*, No. 10 Civ. 6071, 2011 WL 3462317, at *2 (S.D.N.Y. July 27, 2011) (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)); *Guggenheim Capital, LLC v. Birnbaum*, 722 F. 3d 444, 455 (2d Cir. 2013).

**B.     Whether the Default was "Willful"**

  *1. As to Individual Defendant Vincent McCrudden*

At the outset, the Court notes that the Summons issued in this case was addressed to Vincent Patrick McCrudden at his former residential address in Dix Hills, New York, where McCrudden apparently had not lived in several years, according to his then criminal defense attorney, Bruce Barket.  Attorney Barket brought that fact to the attention of Judge Hurley (and the CFTC) in a March 2011 letter.  Defendant McCrudden had been attempting, according to Barket, to retain counsel with experience in the matters raised in the Complaint, but his efforts had been hampered by his incarceration and the fact that he had not been employed for a substantial period of time.  Attorney Barket asserted that the failure to answer was not willful and asked that the defendants be given an extension of time to oppose the application for a Clerk's Certificate of Default.

There can be no dispute that a formal "Answer" was never filed in this case on behalf of either the Corporate Defendants or defendant McCrudden.  Under Rule 55, a party defaults when he "has failed to plead or otherwise defend" the case at hand.  Fed. R. Civ. P. 55(a).  The Court has no way of knowing whether *pro se* defendant McCrudden has knowledge or an understanding of what legally constitutes an "Answer."  However, McCrudden is adamant that he has defended this action and has "consistently responded and complied with the court's directives and requests since receiving news of the suit on 12/1/10."  DE 73.  In fact, in his July 24, 2014 letter to Judge Hurley – responding to the Commission's argument that he had not filed an answer – McCrudden asserted "[l]et the record show that the defendant has answered not once, but twice."  DE 123.

A review of the docket in this case shows that defendant McCrudden, on at least 26 occasions, took some action to address the allegations brought by the SEC, either by moving to dismiss, opposing the motions made by the SEC, or responding to directives from the Court. The first of these communications was made by McCrudden on August 15, 2011, not long after Judge Hurley granted the motion by the Quadrino Schwartz law firm to be relieved as counsel. DE 24. At that time, McCrudden asked for a further stay of the proceedings and explained that he was having difficulty hiring counsel for the corporations based on his incarceration and lack of financial resources. *Id*. The last substantive correspondence from McCrudden occurred on November 4, 2014 when he contacted the Pro Se Office and the Clerk of the Court to raise questions about the default then entered against him and the Corporate Defendants -- actions which he contested. DE 131, 132. In the intervening three years and three months, McCrudden addressed a variety of issues concerning his opposition to the entire litigation and to specific motions, as well as to certain rulings of the Court. These contacts and communications from McCrudden include the following:

- August 15, 2011:  asks Judge Hurley for a further stay based on his incarceration, lack of financial resources to hire counsel and lack of material resources;

- October 4, 2011:  within the 60-day stay period, sends letter to Judge Hurley requesting that Corporate Defendant MAAM be dismissed from the case;

- October 13, 2011:  advises in a letter to Judge Hurley that he is unable to retain counsel and will be proceeding *pro se*; attaches a proposed settlement offer;

- Nov. 22, 2011:  files opposition to CFTC's renewed request for entry of default against the Corporate Defendants, stating that the corporations have a constitutional right to a defense and that

35

entry of default judgment would be "unconscionable"; reiterating that incarceration is hampering his ability to access resources to defend the lawsuit; requests six-month stay of proceedings until after his release;

- **Dec. 12, 2011:** participates in settlement conference which was ultimately unsuccessful;

- **January 5, 2012:** advises in letter to Judge Hurley that he is waiting for decision on the previous requests for dismissal of the action and additional stays; notes that if forced to proceed, he is requesting 27 discovery items from the plaintiff and the ability to depose CFTC officials;

- **January 25, 2012:** raises arguments in letter to Judge Hurley as to the discovery demands served on him by CFTC, including fact that CFTC was already in possession of the information requested based on multiple subpoenas the agency served in 2009; reiterates that case cannot be defended legally from prison;

- **February 24, 2012:** objects in writing to Judge Hurley's rulings in 2/13/14 Order and seeks recusal of Judge Hurley;

- **February 28, 2012:** participates in telephone conference with the undersigned discussing his answers to CFTC's discovery demands;

- **March 8, 2012:** files another motion to dismiss; also files "Opposition For Entry of Default," stating that he has "consistently responded and complied with the court's directives and requests since receiving news of the suit on 12/1/10"; cites cases for the proposition that courts ordinarily disfavor defaults;

- **March 12, 2012:** letter to Judge Hurley pointing out that his 2/24/12 letter was not a motion seeking recusal;

- **April 6, 2012:** writes that he has responded to the CFTC and complied with the Federal Rules and acted in good faith in answering the CFTC's January 11, 2012 questions; complains that CFTC refused to answer any of the 27 requests he made; asserts that the defendants "are being asked unfairly to defend the sole work product of retained, third-party, independent lawyers and law firms and not violations the Defendant knowingly, willingly or recklessly violated in bad faith."

- **Sept. 11, 2012:** notifies the Court that he has not been receiving any correspondence from the Court or CFTC despite the fact that he sent a change of address in May 2012.

- **Sept. 17, 2012:** submits "Supplemental Motion to Dismiss Plaintiff's Complaint" (two-page brief citing cases);

- **Dec. 12, 2012:** files motion for summary judgment pursuant to Rule 56(c);

- **February 5, 2013:** sends letter to Judge Hurley requesting pro bono counsel;

- **February 24, 2013:** submits letter clarifying that the Notice of Appearance filed by Attorney Muniz was on behalf of the Corporate Defendants only;

- **March 20, 2013:** in profanity-laced letter, agrees to re-answer interrogatories to the best of his abilities and demands that CFTC be compelled to answer his interrogatories and document requests;

- **March 23, 2013:** sends letter asserting CFTC violations of the Paperwork Production Act and "Responses to Order Dated March 19, 2013" with other answers to Interrogatory Nos. 1, 3, 5, 8, 9 and 10;

- **April 4, 2013:** sends email to CFTC regarding representation of the Corporate Defendants and confirms that Attorney Muniz still represents the Corporate Defendants, but not McCrudden individually; states he was not under the impression that the Corporate Defendants were in default, and if they were, "we" will be filing a motion to remove them from default;

- **May 1, 2013:** opposes CFTC's request for hearing to address sanctions; points out that he has commenced a lawsuit in the District of Columbia against the CFTC lawyers and, consequently, seeks their dismissal from this action; reiterates that he responded to every Court and CFTC request while he was incarcerated for two years and has no reason to delay this case;

- **October 16, 2013:** sends letter opposing any CFTC request for a stay and again seeking recusal of Judge Hurley;

- **March 13, 2014:** opposes CFTC's request for pre-motion conference on sanctions as unnecessary and encloses copy of his 1/9/14

letter in response to the Court's 1/6/4 Order, and asserting that he has been compliant with the Court's directives. Letter reiterates his reliance on counsel he hired to comply with all applicable state, federal and regulatory rules as to Alnbri and Hybrid Fund II; adds that he is reserving his right not to waive attorney-client privilege and encloses an affidavit that he had never asserted an "advice of counsel" defense; attaches as exhibits supplemental responses to the CFTC's interrogatories and new interrogatories for the CFTC to answer;

- July 24, 2014: sends letter to judge Hurley responding to 7/23/14 CFTC letter stating that he has not filed an answer and adding that the record shows "that the defendant has answered not once, but twice. Therefore defendant has been compliant." Further states that a conference to discuss "default" is completely warrantless and that he was told by the CFTC back in February 2013 that if the entities retained counsel within a week, they would not be in default; he then hired Attorney Muniz on 2/27/13 and Muniz filed a Notice of Appearance for MAAM and Alnbri right away;

- October 21, 2014: submits "Affirmation Response" protesting entry of the certificate of default as to him;

- November 4, 2014: submits letter to Clerk of the Court expressing concern over the speed of the entry of default against him in light of the fact that he was not in default.

This record shows direct involvement by defendant McCrudden in the attempted defense of this action, from an early letter advising Judge Hurley that he did not want Attorney Bruce Barket to represent him in this case since Mr. Barket admittedly did not have expertise in the subject matter of this litigation. DE 18. Of note, the CFTC objected to the motion of Attorney Barket to withdraw on the grounds that "it would not serve the interests of justice or judicial economy, and by proceeding in such a manner, the corporate defendants would be unrepresented." DE 20. After Judge Hurley granted the motion of the Quadrino Schwartz law firm to withdraw as counsel,

defendant McCrudden wrote and asked the Court to appoint counsel for the Corporate Defendants to defend the charges – someone familiar with Commodities law who was competent to argue a case against the SEC. DE 24. In addition, McCrudden asked for a further stay of the case to defend himself *pro se*, stating that the GEO Private Detention Facility in Queens did not have "anywhere near the required resources" for him to defend himself. *Id*. On October 13, 2011, McCrudden informed Judge Hurley that he tried through a family member to get an attorney to represent him pro bono because his family had expended substantial resources on his criminal defense and were unable to contribute more. As a result, McCrudden stated that he would need to continue *pro se*. DE 28. He renewed his request for appointed counsel. *Id*. That request was subsequently denied.

McCrudden took steps at various times to have the case dismissed, including: his motion to dismiss the charges against him individually (in which he lists his specific responses to the allegations in the Complaint) [DE 32]; a further motion to dismiss filed on March 8, 2012 [DE 58]; and a motion for summary judgment filed on December 11, 2012 [DE 77]. He also objected to Judge Hurley's rulings on his motion to dismiss [DE 51], filed a Memorandum of Law in Support of Motion for a Jury Trial [DE 121] and protested the entry of default against him individually in November 2014 [DE 131].

Likewise, the record shows that McCrudden participated, albeit reluctantly and stubbornly at times, in the discovery process. For example, he (1) demanded certain paper discovery from the Commission as well as access to depose certain CFTC officials [DE 43]; (2) opposed various discovery demands served on him by the CFTC [DE 49] although his initial responses lacked any substantive information; (3) responded to this Court's Order granting the Commission's motion to

compel discovery responses, stating that he would answer the interrogatories as directed and further asserting that the Court should compel the CFTC to answer *his* interrogatories and provide the documents *he* requested [DE 88]; (4) opposed the Commission's motion for discovery sanctions; (5) requested that CFTC counsel be removed from the case because of a separate litigation McCrudden commenced against these same attorneys in Washington, D.C.; (6) demanded that CFTC answer his discovery demands [DE 91]; and (7) opposed the CFTC's further request for a pre-motion conference seeking discovery sanctions and/or entry of default, asserting that such conference was unnecessary since he had responded to the Court's January 6, 2014 Order [DE 113].

Taking the record as a whole here, the Court finds that although defendant McCrudden clearly did not file a formal Answer, he has nonetheless "otherwise defended" this case, although less than satisfactorily in a number of instances. The Second Circuit has "embraced a broad understanding of the phrase 'otherwise defend.'" *Guggenheim Capital,* 722 F.3d at 454 (quoting *Mickalis Pawn Shop,* 645 F.3d at 129). Defendant McCrudden's response to this lawsuit has been consistent in terms of his "defending" his positions, even though some of those responses have been deficient and unacceptable in the eyes of the Commission and less than what was needed and warranted from the Court's perspective. However, McCrudden's conduct as demonstrated by the record here is distinguishable from a line of cases in which courts have found the entry of default to be appropriate. *See, e.g.*, *SEC v. McNulty*, 137 F. 3d 732, 738-39 (2d Cir. 1998) (court may find default to have been willful where the conduct of counsel or the litigant was "egregious and was not satisfactorily explained"); *Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 60 (2d Cir. 1996) (willfulness may be found when a defaulting party has acted in bad faith or has "made a

strategic decision to default"); *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 917–19 (3d Cir. 1992) (affirming Rule 55 default judgment against defendants who filed answer and actively litigated pretrial discovery but did not comply with discovery orders or appear for trial); *Brock v. Unique Racketball & Health Clubs, Inc.*, 786 F. 2d 61, 64 (2d Cir. 1986) (default properly entered when defendant demonstrated lack of diligence during pre-trial proceedings, requested and received a mid-trial adjournment, but then failed to appear when the trial resumed); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (defendant failed to "otherwise defend" by "failing to appear for a deposition, dismissing counsel, giving vague and unresponsive answers to interrogatories, and failing to appear for trial"); *compare, Coach, Inc.*, 2011 WL 3462317, at *3 (where reason for defendant's default was her unfamiliarity with federal procedure and the fact that she was unable to retain counsel in New York, as well as the fact that he parties were in settlement discussions, court found default was not willful).

Courts will find willfulness where "there is evidence of bad faith" or in the presence of "egregious or deliberate conduct." *Holland v. James,* No. 05 Civ. 5346, 2008 WL 3884354, at *2 (S.D.N.Y. Aug. 21, 2008) (quoting *Am. Alliance Ins. Co., Ltd.,* 92 F.3d at 60–61). Further, "[c]ourts should 'resolve any doubt about [defendant's] willfulness in its favor.'" *Int'l Reformed University & Seminary*, 2014 WL 923394, at *3 (quoting *Raheim v. New York City Health and Hosps. Corp.,* No. 96 Civ. 1045, 2007 WL 2363010, at *3 (E.D.N.Y. Aug. 14, 2007)). Here, the Court finds that as soon as Defendant McCrudden became aware of the lawsuit, he took immediate steps to defend himself in this action.

"Other equitable factors that a court may consider are 'whether the failure to follow the rules of procedure was a mistake made in good faith and with that the entry of default would bring about a harsh or unfair result." *Coach, Inc.*, 2011 WL 3462317, at *3 (quoting *Enron*, 10 F.3d at 96). As to Defendant McCrudden, the Court finds that the failure to follow the rules of procedure here (*i.e.*, filing an Answer) was a mistake and not done in bad faith. As noted, McCrudden believes he did "answer," and not once, but twice. As he describes it, he has "fought tooth and nail to defend this case." DE 130. Likewise, he immediately objected to the certificates of default when they were entered on October 20, 2014 and registered his protests to the Clerk of the Court, the Pro Se Office, and the Court. *See* DE 130, 131, 133. As to the first factor, the record in this case compels a finding that Defendant McCrudden's "default" was not the result of willfulness. Consequently, the entry of default would bring about a harsh result.

### 2. As to the Corporate Defendants

Whether the certificate of default was properly entered against MAAM and Alnbri is a closer question. In September 2011, Judge Hurley granted an additional 60-day extension of the stay of proceedings, but cautioned Defendant McCrudden that if the defendants had not retained counsel by the end of that period, the Commission would be permitted to renew its motion for a default judgment against the Corporate Defendants. September 14, 2011 Electronic Order. McCrudden advised Judge Hurley on October 13, 2011 that he had not been able to retain counsel and that *he* would be proceeding *pro se*. DE 28. When the Commission renewed its request for entry of default against the two Corporate Defendants, McCrudden opposed the motion, noting that "entering a default judgment in the amount of $58 million in a technical rules violation is unconscionable." DE 37.

In ruling on McCrudden's motion to dismiss MAAM from the action in February 2012, Judge Hurley pointed out that a corporation cannot appear in federal court except by a licensed attorney. DE 47. As a result, Judge Hurley permitted the Commission to renew its request for a certificate of default, which counsel did on February 21, 2012. DE 50. The entry of default as to the two Corporate Defendants was noted in the record on March 5, 2012. McCrudden filed his "Opposition for Entry of Default" on March 8, 2012, asserting that he had "consistently responded and complied with the courts [sic] direction and requests since receiving news of the suit on or about December 1, 2010." DE 59. Judge Hurley thereafter reiterated that a non-attorney cannot make a motion on behalf of a corporate defendant who is not represented by counsel. DE 79 at 15. The CFTC was granted leave to move for a default judgment against MAAM and Alnbri. *Id*. at 16.

On February 27, 2013, Attorney Jose Muniz filed a Notice of Appearance on behalf of MAAM and Alnbri. Judge Hurley issued an Electronic Order on April 2, 2013 directing Muniz to submit a letter clarifying whether he was representing individual Defendant Vincent McCrudden. Muniz responded that he was representing the Corporate Defendants only. DE 90. As this Court has noted, Attorney Muniz has never notified the Court that his representation of the two Corporate Defendants has ceased nor that he was seeking to withdraw from the representation.[7] Significantly, in an April 4, 2013 email to CFTC's counsel, McCrudden expressed surprise that the Corporate Defendants were in default, noting that ". . . I was confused as to why the CFTC would give me a week when I got out of jail to get an attorney for the company's [sic], if they were as you say already in default?" DE 102, Ex. B. Again, in January 2014, McCrudden stated he was "falsely

---

[7] The Court previously pointed out that the docket sheet contains the statement "Terminated: 04/12/2013" under Attorney Muniz's name and address, but the Court believes this entry is in error. *See* page 19, *supra*.

43

lead to believe that obtaining counsel for the entities would remove the companies from default. . . ." DE 114. When the Commission asked Judge Hurley for a pre-motion conference regarding Defendant McCrudden's default on July 23, 2014 [DE 121], McCrudden responded that "[t]he CFTC stated way back in February 2013 that if the entities retained counsel within a week, they would not be in default. On February 27, 2013, Attorney Jose Muniz filed a notice of appearance for MAAM and Alnbri." DE 123.

The record reflects that the Commission found the circumstances somewhat confusing as well. As late as August 15, 2014, the Commission pressed for a "resolution of the outstanding questions surrounding the default status of each of the names defendants." DE 124. In doing so, counsel for the Commission observed that

> An apparent interim appearance indicated that MAAM and Alnbri may have legal representation, but that fact remains unclear as no requests have been made to set aside the defaults and "counsel" for the corporations is not responsive. As for McCrudden, while the individual defendant has actively litigated this matter, the commission cannot discern from the docket an actual "answer" as having been filed – thus placing the case at issue.

*Id*.

Assuming for the sake of argument that the certificate of default was properly entered against the Corporate Defendants, the question remains whether the default should be set aside. In making this determination as to the Corporate Defendants, the Court turns again first to the issue of "willfulness." Obviously, the corporations could not take action on their own. While advocating for himself, McCrudden also attempted to take multiple actions on behalf of the Corporate Defendants, even though he was not competent by law to represent the corporations in this action. On October 4, 2011, McCrudden requested that MAAM be removed from this action [DE 27]. He

later filed a supplemental motion to dismiss on September 17, 2012 [DE 74] and a motion for summary judgment on December 11, 2012 [DE 77]. In many of his filings, the responses and relief sought are intertwined between McCrudden himself and the Corporate Defendants. He also opposed the CFTC's renewed request for entry of default against the Corporate Defendants [DE 37], objected to Judge Hurley's rulings on the motion to dismiss MAAM [DE 51], opposed a subsequent request for entry of default [DE 59], and filed a Memorandum of Law in Support of Motion for a Jury Trial [DE 121].

The Second Circuit has held that "'strong public policy favors resolving disputes on the merits' and that, 'although courts have an interest in expediting litigation, abuses of process may be prevented by enforcing those defaults that arise from egregious or deliberate conduct.'" *Pecarsky v. Galaxiworld.com, Ltd*., 249 F.3d 167, 172 (2d Cir. 2001) (quoting *Am. Alliance Ins. Co.*, 92 F.3d at 61). There has been no demonstration of egregious or deliberate conduct by the Corporate Defendants. It is significant to note that in *Pecarsky*, the district court entered a default judgment against the defendant. On appeal, the Second Circuit stated that

> [a]s a corporation, appellant, Galaxiworld, could only appear with counsel. Banks could not represent the corporation, pro se. In light of Galaxiworld's repeated contact with the district court and apparent efforts to retain new counsel, we cannot say that Galaxiworld deliberately chose not to appear.
>
> Aside from not appearing in court, the record shows that appellants were in constant contact with the district court. Appellants were not ignoring the court's orders; instead, they made repeated efforts to inform the court of their difficulties in finding new counsel. Galaxiworld's inability to find new counsel and resultant inability to appear in court is understandable when the circumstances are considered.

*Pecarsky*, 249 F.3d at 172. Finding that the conduct of Galaxiworld was not willful, the Second Circuit determined that the district court abused its discretion in entering a default judgment

against the defendant especially in such a compressed time frame. *Id*. The instant circumstances share similarities with *Pecarsky*. MAAM and Alnbri's corporate status prevented them from appearing *pro se* and the corporate entities were in repeated contact with the district court, albeit through Defendant McCrudden. Moreover, McCrudden informed the Court on several occasions of the difficulty he was having obtaining counsel because of his incarceration and lack of funds. At one point, the Corporate Defendants obtained the services of Attorney Jose Muniz in order to avoid default. However, the status and whereabouts of Mr. Muniz remain a mystery because there has been no contact from him nor any responses as to discovery issues involving the Corporate Defendants. Even if the certificate of default against the Corporate Defendants is valid, the Court finds that the default here was not willful.

### C. The Question of a "Meritorious Defense"

Whether a defendant seeking to avoid a default judgment has presented a meritorious defense does not depend on the likelihood of success. *Sibley v. Choice Hotels Intern., Inc.*, 304 F.R.D. 125, 131 (E.D.N.Y. 2015). Instead, the test is whether the defendant's position, "if proven at trial, would constitute a complete defense." *Enron*, 10 F.3d at 98. "A meritorious defense exists if based on the defendant's version of events, the factfinder has some determination to make." *Am. Stevedoring, Inc. v. Banana Distribs., Inc.*, No. 98–CV–5782, 1999 WL 731425, at *3 (S.D.N.Y. Sept. 20, 1999) (internal quotation marks and citation omitted).

In the instant case, the recurring theme in the responses actually made by defendant McCrudden – and what appears to the Court to be his primary defense – is that he acted in good faith and relied on attorneys and professionals with expertise in the field to ensure his compliance. Secondly, McCrudden asserts that he never held himself out to be a CPO. For example, in the

letter to Judge Hurley received on October 13, 2011, McCrudden states that

> Cases such as this, technical violations, against other defendants have been settled, and I have been confused why some in the industry have no individuals attached to any charges or settlements, and yet I made sure I retained counsel to represent MAAM and Alnbri to make sure all documentation complied with all laws. As I stated before, I made sure these funds had reputable service providers, such as auditors, administrators, clearing firms, prime brokers, execution brokers, and most importantly, accountants. It was very important to me that I complied.

DE 28. Again, in his motion to dismiss dated March 8, 2012, McCrudden argued that

> Any legitimate or fair court would have thrown this suit out immediately. In fact, this is not the first time McCrudden has raised motions to dismiss based on frivilous [sic]and malicious intent on behalf of the CFTC and other US Regulatory Agencies. In fact Mr. McCrudden's letter to the court dated October 18, 2011 presented the following undisputed facts:
>
> A) "On or about March 2008 (Defendant) hired attorney Jay Malloy from law firm Edwards, Angell, Palmer & Dodge ("EAPD") from Boston, Mass. to:
> 1) Prepare a private placement memorandum making Alnbri the new General Partner of the Hybrid Fund II, LP ("HF II,LP")
> 2) Prepare and send all necessary documentation to comply with all state, federal and regulatory law, rules and regulation.
> 3) Comply with all blue sky laws and prepare all necessary documentation
> 4) During relevant period of retainment of counsel, March 2008 until approx. March 2009, EAPD would be solely relied upon to continuously update documentation to reflect and comply with all state, federal and regulatory law, rules and regulation.
>
> B) On or about March 2009, attorney Jay Gould from law firm Pillsbury Withrop [sic] LLP of San Francisco, Ca. was retained to:
> 1) Become the retained counsel of both Alnbri and HF II, LP
> 2) Prepare and send all necessary updated documentation to be continuously compliant with all state, federal, and regulatory rules, regulation and law."

DE 58.

In his March 8, 2012 "Opposition For Entry of Default" [DE 59] McCrudden pointed out that "[i]t is well argued in a previous motion that not only is there no proof of any 'negligence' or 'recklessness' (mandatory criteria to be established in the statute and suit), but there is already in the hands of the CFTC a plethora of 'good faith' and 'compliance.'" DE 59 at 2. Again, in his April 6, 2012 letter to Judge Hurley responding to a CFTC letter, McCrudden asserts the following:

> So far the defendants are being asked unfairly to defend the sole work product of retained, third-party, independent lawyers and law firms and not violations the Defendant knowingly, willingly or recklessly violated in bad faith. The Defendants will continue to defend the suit to the best of its abilities while still retaining its rights to privileged communication if so desired.

DE 63 at 2.

Accordingly, McCrudden maintains that "as also stated in [his] letter to the court on October 18, 2011, McCrudden 'relied exclusively on counsels advice.'" DE 58 at 3. Likewise, McCrudden asserts that he

> traded less that three months of financial futures during the "relevant period" of 2008. He never "held himself out" as a Commodity Pool Operator ("CPO"), and therefore never held himself out as an Associated Person ("AP") as in Count One of the suit. McCrudden traded mostly *other* products, including exchange traded equities and options on behalf of the fund. He relied on counsels advice of firstly, "do not hold yourself out as a CPO", and "the fund is exempt from registration with less than fifteen (15) clients."
>
> *    *    *
>
> Based on the CFTC allegations, they might as well call on their buddies at the US Attorneys office and charge the law firms, administrator, auditor, custodial bank and FCM with there [sic] favorite charge of "conspiracy". For if I "knew" I was violating the law, then I must have "induced" all of these reputable firms and professionals. And even then, they would have to

> still prove I acted not just "negligent, but also reckless". 173 F. Supp 2d
> 1295 Commodity Futures Trading Commission v. R. J. Fitzgerald & Co.
> (5/01).

*Id.*

Defendant McCrudden's positions about whether he is relying on the advice of counsel as a defense in this case appear to change depending on the context and appear to reflect his personal confusion regarding "advice of counsel" as a defense and the assertion of "attorney-client privilege" as a basis for withholding production of certain documents and information. On various occasions, McCrudden emphasizes that MAAM retained Sadis and Goldberg to comply with all the "laws, rules, disclosures and regulations," and that Alnbri retained Edwards, Angell, Palmer and Dodge as well as Pillsbury Winthrop for the same purpose. DE 89. Likewise, the Corporate Defendants hired the Kelley Drye and Louis Burke law firms to handle appeals. *Id.*; *see also* DE 58, 114.

At other times, in response to the Court's explanation that if he was asserting advice of counsel as a defense, as he appeared to be doing, then he was effectively waiving attorney-client privilege and would have to produce documents being withheld on the grounds of such privilege, DE 108; *see also* DE 79, McCrudden responded that he was reserving his right ***not*** to waive attorney-client privilege, *see* DE 114. He noted in an affidavit that he had never stated a "reliance on counsel" defense, and, therefore, was not required to provide a privilege log or any communications with any attorneys. *Id.* This information stands in direct contrast to McCrudden's October 18, 2011 letter where he states that he "relied exclusively on counsels advice." DE 58.

"Good faith reliance on the advice of an accountant or an attorney has been recognized as a viable defense to scienter in securities fraud cases." *SEC v. Caserta*, 75 F.Supp. 2d 79, 94 (E.D.N.Y. 1999) (citing *SEC v. Goldfield Deep Mines Co. of Nev., AAA*, 758 F.2d 459, 467 (9th Cir. 1985)); *see also Newton v. Uniwest Fin. Corp.*, 802 F. Supp. 361, 367-68 (D. Nev. 1990), *aff'd* 967 F.2d 340 (9th Cir. 1992) (granting summary judgment for defendant because, *inter alia*, plaintiff had not produced evidence to counter defense of good faith reliance on accountant); *Mathews v. Centex Telemgmt., Inc.*, No. C-92-1837, 1994 WL 269734, at *7 (N.D. Cal. June 8, 1994) (granting summary judgment for defendants because, in part, [d]efendants also conferred with and relied in good faith on their outside auditor").

The Second Circuit has made clear that reliance upon advice of counsel is a defense if an individual "made complete disclosure to counsel, sought advice as to the legality of his conduct, received advice that his conduct was legal, and relied on that advice in good faith." *Markowski v. SEC*, 34 F.3d 99, 104-105 (2d Cir. 1994); *SEC. & Exch. Comm'n v. Leffers,* 289 F. App'x 449, 451 (2d Cir. 2008) (citing *Markowski*, 34 F.3d at 104-05); *SEC v. Wyly*, 950 F. Supp. 2d 547, 565 (S.D.N.Y. 2013). Even at that juncture, "such reliance is not a complete defense, but only one factor for consideration." *Markowski*, 34 F.3d at 105. Notwithstanding defendant McCrudden's personal notions of what constitutes "advice of counsel" and whether his conduct in the events underlying the Complaint was legal, it seems to the Court that taking all of his filings into account, he is clearly asserting an advice of counsel defense. McCrudden maintains that he relied on the law firms hired by the Corporate Defendants to, among other things, prepare a private placement memorandum making Alnbri the new General Partner of the Hybrid Fund II, LP. He asserts that he relied on those firms to prepare and send all necessary documentation to comply with all state and

federal laws, rules and regulations. According to McCrudden, "during relevant period of retainment of counsel, March 2008 until approx. March 2009, EAPD would be solely relied upon to continuously update documentation to reflect and comply with all state, federal and regulatory law, rules and regulation." DE 58.

It is impossible to tell at this juncture of the litigation whether that defense is viable, and the Court need not make such a finding at this point. As noted in *Enron*, the test is whether the defendant's position, "if proven at trial, would constitute a complete defense." *Enron*, 10 F.3d at 98. McCrudden is required to proffer evidence sufficient to establish each of the three elements. However, he does not have to make such a proffer at this point in time; rather, he can complete discovery and raise the defense once it has been fully vetted on summary judgment or at trial. *See U.S. Commodity Futures Trading Commission v. McCrudden*, No. 10 CV 5567, 2013 WL 142377, at *5 (E.D.N.Y. Jan. 11, 2013); *Sibley*, 304 F.R.D. at 131.

On the instant record, the Court finds that McCrudden's version of events will leave the factfinder with a determination to be made. *Am. Stevedoring, Inc.*, 1999 WL 731425, at *3. For these reasons, the Court finds that as to the advice of counsel, McCrudden has raised a meritorious defense, at least for the time being.

McCrudden also maintains that the claims asserted against him based on his status as the "controlling person" of MAAM and Alnbri are not sustainable because the CFTC cannot show that he "did not act in good faith or knowingly induced" MAAM and Alnbri's alleged violations of Section 4(m)(1) of the Commodity Exchange Act and Regulation 4.13(b)(4). *Se*e DE 27, 32, 58, 74. As to the Corporate Defendants, according to the Commission, they "acted as a commodity pool operator without registering with the Commission or claiming a valid exemption." Compl.

¶¶ 20, 22, 24-30.  Further, the Commission contends that MAAM violated Commission

Regulations by failing to correct the inaccurate information contained in its notice of exemption.

*Id*.  With respect to whether the movant has a meritorious defense, the defendant must go further

than merely "alleging that a defense exists." *Dudley v. Pendagrass*, No. 06 CV 216, 2008 WL

4790501, at *4 (E.D.N.Y. Oct. 31, 2008) (quoting *Todtman, Nachamie, Spizz & Johns, P.C. v.

Ashraf*, No. 05 Civ 10098, 2006 WL 2850210, at *1 (S.D.N.Y. Oct. 4, 2006). However, the

threshold is very low – the movant need only present some evidence demonstrating "that if relief

is granted the outcome of the suit may be different than if the entry of default or the default

judgment is allowed to stand." *In re Martin–Trigona*, 763 F.2d 503, 505 n. 2 (2d Cir. 1985).

The Commodity Exchange Act requires certain individuals to register with the CFTC.

Section 6k(2) of the Act states, in pertinent part, that:

> It shall be unlawful for any person to be associated with a commodity pool
> operator as a partner, officer, employee, consultant, or agent (or any person
> occupying a similar status or performing similar functions), in any capacity
> that involves (i) the solicitation of funds, securities, or property for a
> participation in a commodity pool or (ii) the supervision of any person or
> persons so engaged, unless such person is registered with the Commission...

7 U.S.C. § 6k(2).  Further, any Commodity Operator (" CPO") that permits an individual to be an

"associated person" with the CPO when it knew or should have known that such individual was

not registered is a violation of the statute.  *Commodity Futures Trading Comm'n v. British

American Commodity Options Corp.*, 560 F.2d 135, 139-40 (2d Cir. 1977).  An "associated

person" under the statute is a partner, officer, employee, consultant, or agent that either solicits

funds, securities, or property for participation in a commodity pool, or supervises person engaged

in such conduct.  7 U.S.C. § 6k(2).

In parsing the charges against him, McCrudden states that in order to prove a violation of the Commodity Exchange Act, the Commission must prove that "*the controlling person had actual or constructive knowledge of the core activities that constitute the violation at issue and allowed them to continue*." DE 58 (quoting *In re Speigel* [1987-1990 Transfer Binder] Comm. Fut. L. Rep. (CCH) p.24, 103 at 34,767 (CFTC Jan. 12, 1988)) (emphasis in the original). McCrudden adds that the "*controlling person must also act recklessly; negligence alone is insufficient*." *Id*. (emphasis in the original). According to McCrudden, he can "easily prove good faith alone, and in fact, the CFTC is already in possession of these facts by the excessive subpoenas issued and received by them from two different law firms, and administrator, and auditor, a Futures Commission Merchant ("FCM"), a Broker Dealer, a major commercial bank, the Secretary of States in Delaware and New York, Limited Partners of the fund itself, and the defendant as representative of Managed Accounts Asset Management, LLC ("MAAM") and Alnbri Management, LLC ("Alnbri")." *Id*. In addition, McCrudden argues that the charges brought by the CFTC include a "relevant period " of May 8, 2008 to September 30, 2008 – a time when the defendants were not in violation of the "CFTC reauthorization act of 2008, and clearly not at all of violating the Dodd-Frank act of 2010." DE 32. Once again, McCrudden asserts that in late December 2005, MAAM was represented by Sadis & Goldberg, LLP. That firm filed for an exemption with the National Futures Association, pursuant to Regulation 4.13(a)(3) that would allow MAAM to operate a hedge fund, not a commodity pool. *Id*. As such, MAAM would be exempt from registering with the NFA and CFTC. McCrudden states that the defendants relied exclusively on counsel's advice that so long as the fund maintained fewer than 15 clients and did not hold itself out as a commodity pool, it could maintain its exemption. *Id*. Accordingly, "the

defendants acted exclusively on advice from counsel and in good faith to comply with all rules and regulations." *Id*. McCrudden also lays out in some detail the subsequent retention of counsel for each of the acts undertaken by the defendants. He continues to maintain that he never acted as an "associated person," did not commit acts and omissions in violation of any section of the Commodity Exchange Act, and "active in extreme good faith and that all times sought compliance by retaining knowledgeable experienced and reputable counsel." *Id*.

As noted earlier, "[w]hether a defendant seeking to avoid a default judgment has presented a meritorious defense does not depend on the likelihood of success." *Sibley*, 304 F.R.D. at 131. At this stage, the Court finds that as to the contention that he was not in "associated person," Defendant McCrudden has presented enough information to assert a meritorious defense on this issue given the low threshold required. *In re Martin–Trigona*, 763 F.2d at 505.

### D.      Prejudice

"A plaintiff may demonstrate prejudice by showing that 'his ability to pursue the claim has been hindered since the entry of the judgment' or by 'the loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment.'" *Rahaim v. New York City Health and Hospitals Corp*., No. 96 Civ. 1045, 2007 WL 2363010, at * 5 (E.D.N.Y. Aug. 14, 2007) (quoting *Farrell v. Cty. Van & Storage, Inc.*, No. 96 Civ. 1174, 1996 WL 705276, at *3 (E.D.N.Y. Nov.25, 1996)) (internal citations omitted). "Delay standing alone does not establish prejudice." *Enron*, 10 F.3d at 98. Instead, "delay is prejudicial if it engenders a loss of evidence, discovery problems, or the opportunity for fraud and collusion." *Pension Benefit Guaranty Corp. v. Canadian Imperial Bank of Commerce*, No. 87 CIV. 1046, 1989 WL 50171, at * 4 (S.D.N.Y. May 8, 1989). Although vacatur "may delay plaintiffs' recovery, delayed recovery does not establish

prejudice in the absence of a showing that the delay has resulted in the loss of evidence or will create difficulties in discovery." *LaBarbera*, 2008 WL 508630, at * 2 (citing *Enron*, 10 F.3d at 98).

In the instant circumstances, the Court finds that a loss of evidence is not likely here. Many of the materials which the Commission needs to prosecute its case are already in its possession by virtue of the subpoenas it served several years ago on the firms representing Defendant McCrudden and the Corporate Defendants at the time of the events giving rise to the Complaint. And, notwithstanding the fact that there have been problems with discovery in this case, the Court expects those issues to be resolved since the defendants have now retained counsel who has taken affirmative steps since coming into the case to get the case moving again.[8] The Court expects that with counseling of the formerly *pro se* Defendant McCrudden by his new attorney as to his discovery obligations, these previous difficulties with the discovery process will be quickly resolved.

Further, no default judgment has been entered here. Nor does the record disclose any opportunity for fraud and collusion or the destruction of evidence. In fact, the record does not demonstrate the type of prejudice contemplated by Rule 55(c). Because there is no indication that delay would impede discovery, I find that the CFTC would not be prejudiced by an order vacating the entry of default.

---

[8] On May 19, 2015, Abigail C. Field, Esq. filed a Notice of Appearance on behalf of all defendants in this action. DE 137. Immediately upon doing so, Attorney Field submitted a letter to Judge Hurley seeking a pre–motion conference, noting that she would "like to move to vacate the entries of default against all three Defendants." DE 138. This Court held a short conference with counsel for both sides on June 29, 2015 to discuss the procedural aspects of the instant application as well as Attorney Field's request for a pre-motion conference. DE 140. Since that time, Attorney Field has also filed another motion to Judge Hurley regarding his presiding over this case. DE 141.

### E.       The Defaults Should Be Set Aside

Given the totality of the circumstances here, this Court finds that the certificate of default as to individual Defendant Vincent McCrudden should not have been entered in the first instance because McCrudden has "otherwise defended" this action from the outset. *Guggenheim Capital*, 722 F.3d at 454. Therefore, the Court respectfully recommends to Judge Hurley that the certificate of default be declared null and void and that McCrudden be granted permission to file a late Answer – particularly since he now has counsel who appears to be actively engaged in the litigation. "The party seeking to answer is given the same opportunity to present mitigating circumstances that it would have had if a default had been entered and it had then moved under Rule 55c) to set is aside." *Pension Benefit Guaranty Corp*., 1998 WL 50171, at *2.

Should Judge Hurley find that the certificate of default was properly entered, then this Court alternatively recommends that the default be vacated. Because there has been no evidence of bad faith nor the presence of egregious or deliberate conduct, the Court finds that Defendant McCrudden's default was not willful in nature. *See Holland,* 2008 WL 3884354, at *2. As noted previously, "[c]ourts should 'resolve any doubt about [defendant's] willfulness in its favor.'" *Int'l Reformed University & Seminary*, 2014 WL 923394, at *3. The Court finds that Defendant McCrudden and the Corporate Defendants have satisfied the three criteria set forth in *Enron* to set aside an entry of default. The Second Circuit has "expressed on numerous occasions its preference that litigation disputes be resolved on the merits, not by default." *Cody v. Mello*, 59 F. 3d 13, 15 (2d Cir. 1995) (collecting cases); *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005); *Enron*, 10 F.3d at 95. "Because defaults are generally disfavored and are reserved for rare occasions, when

doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in

favor of the defaulting party." *Enron*, 10 F. 3d at 96; *LaBarbera v. MMK Trucking, Inc.*, 2008 WL

508630, at *2 (entry of default is not favored and is considered an "extreme sanction" which must

remain a weapon of last resort).

In addition, the Court is mindful of the Second Circuit's caution when a question of default

involves a *pro se* litigant:

> Further, concerns regarding the protection of a litigant's rights are
> heightened when the party held in default appears pro se. A party appearing
> without counsel is afforded extra leeway in meeting the procedural rules
> governing litigation, and trial judges must make some effort to protect a
> party so appearing from waiving a right to be heard because of his or her
> lack of legal knowledge. *See Traguth*, 710 F.2d at 95; *see also Haines v.
> Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (per
> curiam) (allegations of pro se complaint are held to less stringent standard
> than formal pleading drafted by lawyers, when court considers a motion to
> dismiss). Hence, ***as a general rule a district court should grant a default
> judgment sparingly and grant leave to set aside the entry of default freely
> when the defaulting party is appearing pro se***.

*Enron*, 10 F.3d at 96 (emphasis supplied).  In light of Defendant McCrudden's *pro se* status until

very recently, and implementing the Second Circuit's guidance, the Court should grant leave to set

aside the entry of default here freely, for both the individual and the Corporate Defendants.

## IV.   CONCLUSION

For the foregoing reasons, this Court respectfully recommends to Judge Hurley that the

CFTC's request to move forward with a motion for entry of default judgment be DENIED.

Further, the Court recommends that as to the individual Defendant Vincent McCrudden, the

certificate of default be declared null and void and that McCrudden be granted permission to file a

late Answer.  In the alternative, the Court recommends that the default be vacated.  Likewise, the

Court also recommends that the default of the Corporate Defendants be set aside and that they, too, be permitted to file a late Answer.

## V.    OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  *See also* FED. R. CIV. P. 6(a) and (e).  Such objections shall be filed with the Clerk of the Court via ECF.  A courtesy copy of any objections filed is to be sent to the chambers of the Honorable Denis R. Hurley, and to the chambers of the undersigned.  Any requests for an extension of time for filing objections must be directed to Judge Hurley prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 188 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED.**

Dated: Central Islip, New York
        October 13, 2015

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge