UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
U.S. COMMODITY FUTURES TRADING
COMMISSION,

                Plaintiff,

   - against-

VINCENT PATRICK MCCRUDDEN,
MANAGED ACCOUNTS ASSET MANAGE-
MENT, LLC, and ALNBRI MANAGEMENT,
LLC,

                Defendant.
----------------------------------------------------------X

**MEMORANDUM & ORDER**

Civil Action No. 10-5567

**APPEARANCES:**

**For Plaintiff:**
James H. Holl, III, Esq.
Chief Trial Attorney
U.S. Commodity Futures Trading Commission
1155 21st St, NW
Washington, DC 20581

**For Defendant Vincent Patrick McCrudden:**
Vincent Patrick McCrudden, Pro Se
3942 Hillstead Lane
Jacksonville, FL 32216

**For Defendants Managed Accounts Asset Management, LLC, and Alnbri Management, LLC**:
Michael Peter Kushner, Esq.
Kushner Law Group
16 Court Street, Suite 2901
Brooklyn, New York 11241

**HURLEY, Senior District Judge:**

    Plaintiff, U.S. Commodity Futures and Trading Commission ("Plaintiff" or

"CFTC"), brought this action alleging that defendants Vincent McCrudden ("McCrudden"), Managed Accounts Asset Management, LLC ("MAAM"), and Alnbri Management, LLC ("Alnbri") (collectively "Defendants") committed acts violative of the Commodity Exchange Act (the "Act"), 7 U.S.C. § 1 et seq. and the regulations promulgated thereunder. The purpose of this Memorandum is to address what, if any, penalties should be imposed.

I.  BACKGROUND

MAAM, having withdrawn its previous registration as a Commodity Pool Operator ("CPO"), and McCrudden, having withdrawn his previous registration as an associated person ("AP") of MAAM, reapplied with the Commission for registration as a CPO and AP respectively in August 2004. After a hearing, those applications were denied by order dated June 10, 2005, on the ground that McCrudden was disqualified from registration for "good cause," which order was affirmed by the Commission. McCrudden filed an appeal from the CFTC's decision. *(See* Complaint ¶¶ 16-19; Answer ¶¶ 16-19.) On February 6, 2008, the Second Circuit issued a summary order affirming the disqualification from registration. (*Id.* ¶ 19.) The Circuit held that the "CFTC's conclusion that conduct attributable to McCrudden demonstrates dishonesty, and a disregard of or inability to comply with Commodity Exchange Act requirements [was] supported by the weight of the evidence." *McCrudden v. Commodity Futures Trading Comm'n*, 264 Fed. App'x 26, 27 (2d Cir. 2008). Additionally, the Circuit upheld the Commission's finding that

McCrudden had not demonstrated that his registration would not pose a substantial risk to the public given, inter alia, the absence of evidence mitigating McCrudden's original conduct and his failure to accept responsibility for his wrongdoing. *Id.*

On December 1, 2010, the CFTC filed the instant action. In sum, the complaint alleges that from May 8, 2008 to September 30, 2008 the commodity pool Hybrid Fund II, LP ("Hybrid Fund II") was operated by CPOs that were neither registered as CPOs with the Commission, as required under the Act, nor validly exempt from the requirement to register. Although MAAM had filed a notice of exemption from registration with the Commission, the Hybrid Fund II was not operated in accord with the exemption, rendering MAAM's exemption invalid and requiring it to be registered as a CPO. Alnbri, which succeeded MAAM as the fund's sole general partner on April 17, 2008, never filed a notice of exemption with the Commission and was, therefore, never authorized to operate the Hybrid Fund II under any exemption from registration. Neither MAAM nor Alnbri were registered as CPOs during the relevant period. MAAM and/or Alnbri, as unregistered CPOs of Hybrid Fund II, directed the buying and selling of exchange traded commodity futures contracts on behalf of Hybrid Fund II. McCrudden, the "owner, organizer, authorized manager, managing member, and sole officer of both MAAM and Alnbri," acted as an AP of MAAM and Alnbri without being registered as such. (*See* Complaint ¶¶ 11-15, 22-34.)

In or about September 2016,[1] the parties entered into a Consent Order for Permanent Injunction and Other Statutory and Equitable Relief (the "Consent Order") effecting a partial settlement of the matters alleged in the complaint. (*See* DE 166.) Under the terms of the Consent Order, Defendants agreed that "the allegations contained in the Complaint and of the Findings of Fact and Conclusions of Law contained in this Consent Order shall be taken as true and correct and be given preclusive effect, without further proof, in the course of . . . any proceedings to 1) determine the length of any trading and/or registration ban; and 2) setting the appropriate amount of civil monetary penalty, if any, that may be entered herein . . . ." The allegations of the complaint and of the Finding of Facts and Conclusions of Law in the Consent Order, as accurately synopsized by the CFTC, are as follows:

> During the period from May 8, 2008 to September 30, 2008 (the "relevant period"), the commodity pool Hybrid Fund II, LP ("Hybrid Fund II") was operated by commodity pool operators ("CPOs") that were neither registered as CPOs with the Commission, as required under the Act, nor validly exempt from the requirement to register as CPOs. Although MAAM filed a notice of exemption from registration with the Commission, the Hybrid Fund II was not operated in accord with the exemption during the relevant period, rendering MAAM's exemption invalid and requiring it to be registered as a CPO. Alnbri never filed a notice of exemption with the Commission and was, therefore, never authorized to operate the Hybrid Fund II under any exemption from registration. Neither MAAM nor Alnbri were ever registered as CPOs.
> During the relevant period, McCrudden acted as an

---

[1] A thorough discussion of the chronology of this litigation prior to the entry of the Consent Order is contained in the October 13, 2015 Report and Recommendation of Magistrate Judge Tomlinson (DE 144).

> associated person ("AP") of MAAM and Alnbri, without being registered as such, while soliciting funds for participation in the pool from prospective and actual pool participants and/or supervising others so engaged. Throughout the relevant period, MAAM and/or Alnbri, as unregistered CPOs of Hybrid Fund II, directed the buying and selling of exchange traded commodity futures contracts on behalf of Hybrid Fund II.
>
> By this conduct and the further conduct alleged in the Complaint and stipulated to by Defendants in the Consent Order of Permanent Injunction (Docket # 166 ), McCrudden, MAAM and Alnbri engaged in acts and practices in violation of 7 U.S.C. §§ 6k(2) and 6m(1), and McCrudden and MAAM engaged in acts and practices in violation of 17 C.F.R. § 4.13(b)(4) (2010).
>
> Furthermore, McCrudden committed the acts and omissions described herein within the course and scope of his employment, management of, and/or agency with, MAAM and Alnbri; therefore, MAAM and Alnbri are liable under 7 U.S.C. § 2(a)(1)(B), and 17 C.F.R. § 1.2 (2010), for violations of the Act and Regulations committed by McCrudden.

(Pl.'s Penalty Phase Brief (Pl.'s Br.) at 1-2.) The Consent Order contains an injunction permanently restraining, enjoining and prohibiting Defendants from directly or indirectly violating 7 U.S.C. §§ 6k(2) and 6m(1) (2012), and 17 C.F.R. § 4.13(b)(4) (2016). However, the issues of necessary relief pursuant to 7 U.S.C. § 13a-1 (2012), regarding the imposition of trading and registration bans, if any, and civil monetary penalties, if any, to be assessed against Defendants were reserved for determination by this Court. (Consent Order at ¶ 14, *see also id.* at 37.) In connection with any further request for injunctive relief and/or civil monetary penalties, Defendants agreed that (a) they will be "precluded from arguing that they did not violate the federal laws as alleged in the Complaint;" (b) they "may not

challenge the validity of their consents and agreements [in the Consent] Order;" (c) "solely for the purposes of such motion, the allegations of the Complaint and the Findings of Fact and Conclusions of Law in [the] Consent Order shall be accepted as and deemed true by the Court;" and (d) "the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, witness testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure." (*Id.* at ¶ 38.)

## II. THE PARTIES' CONTENTIONS

The CFTC argues that a civil monetary penalty of $390,000.00 should be imposed against Defendants, jointly and severally, using the maximum statutory fine amount of $130,000.00 times the three counts alleged in the complaint (viz., failure to register as an AP of a CPO, failure to register as a CPO, and failure to notify the National Futures Association ("NFA") of an inadequate exemption notice). The maximum statutory fine is appropriate, the CFTC posits, because "[t]he registration requirements of the Act . . . are a cornerstone of the regulatory framework intended to protect the public." (Pl.'s Br. at 3 (citing *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 280 (9th Cir. 1979)). It further asserts that a permanent ban on trading and registration is appropriate given that Defendants circumvented the regulatory structure by failing to register, which conduct "was intertwined with Defendants' regular business practices in handling

and trading customer funds in the commodity futures and options markets." (Pl.'s Br. at 6.) Plaintiffs have requested argument in support of its case but do not indicate that an evidentiary hearing is necessary.

Defendants maintain that no penalty should be given. They cite a number of other cases which they maintain demonstrate that the penalty sought herein, indeed the prosecution of this case, is "a tragedy and abuse of authority and discretion." (Defs.' Penalty Br. (DE 188) at 21.) Further, they dispute whether McCrudden is liable as a control person, contend the Consent Order was signed under duress, and assert that McCrudden has demonstrated "significant good faith to be compliant with all state, federal and regulatory rules and regulations." (*Id. passim*.) Defendants have advised the Court that they "do not think an oral hearing will benefit anyone and all information about this simple case will be included in the pleadings" but if the Court "deem[s] an oral hearing [is] needed to clear up any facts" they would be available. (Def.'s May 10, 2017 Ltr (DE 187) p. 1).)

Given the position of the parties, as confirmed by the Court's review of the record, no hearing on this matter is required.

### III. DISCUSSION

#### A. Format of Decision

By way of format, the Court will first address McCrudden's claim that the Consent Order was signed under duress. Then, the standards governing the imposition of civil monetary fines and injunctive relief will be set out. Finally, those

standards will be applied to present case.

### B. McCrudden's Claim of Duress

The sum and substance of the claim of duress is as follows:

> This is an unusual case. The Court is being asked to find if there should even be a penalty on no findings of guilt of any violations of the defendants. The Court simply has a signed consent order with a "statement of facts" that was signed under duress and quite simply because the Defendants in this case were denied due process and was [sic] told they would never see a jury in this case. After 7 years, enough was enough.

(Defs.' Penalty Br. at 18.)

The claim of duress is in direct contravention of the representations made in the Consent Order itself. Therein, Defendants "affirm[ed] that they have read and agreed to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat, has been made by the Commission or any member, officer, agent or representative thereof, or by any person, to induce consent to this Consent Order." (Consent Order numbered ¶ 2.)

Additionally, findings of duress that permit a party to disown its obligations under an agreement are "reserved for extreme and extraordinary cases." *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 123 (2d Cir. 2001). To void a contract on the ground of duress, a party must show "(1) a wrongful threat that (2) precluded the exercise of [that party's] free will." *Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n*, 655 F.3d 136, 142 (2d Cir. 2011). Defendants have failed to offer any evidence to support either prong of the required showing.

The claim of duress is therefore rejected.[2]

**C.     Standards for the Requested Relief**

1.     <u>Injunctive Relief</u>

The Commodity Exchange Act provides, in pertinent part, that "[u]pon a proper showing a permanent . . . injunction . . . shall be granted without bond." 7 U.S.C. § 13a-1(b). Under Second Circuit precedent, this requires that the Commission show "there is a likelihood that, unless enjoined, the violations will continue." *Commodity Futures Trading Comm'n v. Am. Bd. of Trade, Inc.*, 803 F.2d 1242, 1250-51 (2d Cir. 1986); *cf. Commodity Futures Trading Comm'n v. Creagh*, 2017 WL 1929624, at *2 (S.D.N.Y. May 10, 2017) ("Courts need not enjoin only identical future violations; they may extend to restrictions on trading activity generally, if a court finds that defendants are not likely to 'make good faith efforts to comply with restrictions,' more broadly, in the future."). Courts consider "the totality of the circumstances" including "past illegal conduct" in determining whether a defendant is likely to repeat the wrong. *See SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 807 (2d Cir. 1975). A totality of the circumstance includes "the egregiousness of the defendant's actions, the isolated or recurrent nature of the infraction, the degree of scienter involved, the sincerity of the defendant's

---

[2] The Court notes parenthetically that, contrary to Defendants' assertion otherwise, it is not unusual to determine penalties for violation of the securities laws on the basis of a consent order. *See, e.g., SEC v. Metter*, 706 Fed. App'x 699 (2d Cir. Aug. 29, 2017).

assurances against future violations, the defendant's recognition of the wrongful nature of his conduct, and the likelihood that the defendant's occupation will present opportunities for future violations." *Commodity Futures Trading Comm'n v. Wilshire Inv. Mgmt. Corp.*, 531 F.3d 1339, 1346 (11th Cir. 2008) (citation omitted); *accord SEC v. Commonwealth Chem. Sec., Inc.,* 574 F.2d 90, 100 (2d Cir. 1978); *Commodity Futures Trading Comm'n v. Incomco, Inc.*, 580 F. Supp. 1486, 1489 (S.D.N.Y. 1984) (citing *SEC v. Universal Major Industries*, 546 F.2d 1044, 1048 (2d Cir. 1976)).

    2.    <u>Civil Monetary Penalty</u>

"In determining an appropriate [monetary] penalty, [a court] 'considers the general seriousness of the violation as well as any particular mitigating or aggravating circumstances that exist.' " *Creagh*, 2017 WL 1929624, at *2 (quoting *Wilshire Inv. Mgmt. Corp.*, 531 F.3d at 1346). The penalty imposed must be "rationally related to the offense" and rests within the discretion of the Court. *Id.* (quoting *R & W Tech. Servs. Ltd. v. CFTC,* 205 F.3d 165, 177 (5th Cir. 2000)). A defendant's ability to pay is also a relevant consideration. *U.S. Commodity Futures Trading Comm'n v. Fan Wang*, 261 F. Supp. 3d 383, 388-89 (S.D.N.Y. 2017).

    **D.**    **What Injunctive Relief, if any, is Warranted in this Case?**

In arguing that injunctive relief is not warranted in this case, Defendants assert that McCrudden is not liable as a control person. As a signatory to the Consent Order, McCrudden agreed that "the allegations contained in the Complaint

and all of the Finding of Facts and Conclusions of Law contained in [the] Consent Order shall be taken as true and correct *and be given preclusive effect*, without further proof, in the course of . . . any proceeding . . . 1) to determine the length of any trading and/or registration ban; and 2) setting the appropriate amount of civil monetary penalty, if any, that may be entered herein . . . ." (Consent Order numbered ¶ 11 (emphasis added).) Included in the Findings of Fact and Conclusions of Law of the Consent Order are the following:

- "McCrudden was the owner, organizer, authorized manager, managing member, and sole officer of both MAAM and Alnbri." (*Id.* at numbered ¶ 16.)

- "During the period from May 8, 2008 to September 30, 2008 . . . MAAM and Alnbri, by and through McCrudden, used the mails or other means or instrumentality of interstate commerce to solicit and accept funds from Hybrid Fund II participants and directed the buying and selling of exchange traded commodity futures contracts on behalf of the Hybrid Fund II. Through this conduct, MAAM and Alnbri acted as commodity pool operators . . . ." (*Id.* at numbered ¶ 20.)

- "Pursuant to 17 C.F.R. § 4.13(a)(3) (2016), McCrudden, on behalf of MAAM, filed a notice of exemption from the requirement to register as a CPO. However, McCrudden and MAAM did not operate the Hybrid Fund II in accordance with the claimed exemption during the relevant

period. Moreover, Alnbri never filed any notice of exemption with the Commission." (*Id.* at numbered ¶ 22 .)

- "McCrudden committed the acts and omissions described herein within the course and scope of his employment, management of, and/or agency with, MAAM and Alnbri as the owner, organizer, authorized manager, managing member, and sole officer of both MAAM and Alnbri." (*Id.* at numbered ¶ 24 .)

- "*McCrudden is liable as a controlling person for MAAM's and Alnbri's violations of the Act*, pursuant to 7 U.S.C. § 13c(b) (2012). A controlling person is defined as '[a]ny person who, directly or indirectly, controls any person who has violated any provision of the Act [if that controlling person] did not act in good faith or knowingly induced, directly or indirectly, the act or acts constituting the violation.' *Id.* McCrudden was MAAM's and Alnbri's owner, organizer, authorized manager, managing member and thus had the requisite control. McCrudden is thus liable for MAAM's and Alnbri's violations of 7 U.S.C. § 6m(l) (2012)." (Consent Order at numbered ¶ 34 (emphasis added) .)

Defendants' current assertion that McCrudden is not liable as a control person is wholly contrary to the relevant portions of the Consent Order and therefore will not be considered. *See SEC v. Metter*, 706 Fed. App'x at 702 ("[W]e

elect simply not to consider those contentions made by Metter on appeal that are in violation of the [consent] judgment.")[3]

Similarly, in view of the Second Circuit's affirmance of the CFTC's 2005 Order denying the applications for registration of McCrudden and MAAM, the Court will not consider any arguments concerning the propriety of that denial.

The Court will now discuss the factors set forth above vis a vis the appropriate injunctive relief, if any.

The first factor for consideration is the "egregiousness of the defendants' actions." While Defendants characterize the conduct as a "simple registration violation," such a description does not adequately capture either the importance of the registration process to the regulatory scheme nor the course of conduct at issue. In *Commodity Futures Trading Comm'n v. British Am. Commodity Options Corp.*, 560 F.2d 135 (2d Cir. 1977), the Court described the Act's registration requirement thusly:

> The intent of the congressional design is clear: persons engaged in the defined regulated activities within the commodities business are not to operate as such unless registered, the Commission is charged in the first instance with determining the applicant's qualifications and whether proper grounds exist for refusing registration, and the Commission is empowered to seek injunctive prohibitions against any violations of any

---

[3] This extends to the argument that McCrudden acted in good faith. *See* 7 U.S.C. § 13c(b) (defining a controlling person as "[a]ny person who, directly or indirectly, controls any person who has violated any provision of the Act [if that controlling person] did not act in good faith or knowingly induced, indirectly or indirectly, the act or acts constituting the violation.")

> provisions of the Act, including registration provisions. Registration is the kingpin in this statutory machinery, giving the Commission the information about participants in commodity trading which it so vitally requires to carry out its other statutory functions of monitoring and enforcing the Act.

*Id.* at 139-40.

Here, the failure to register must be viewed in the context of MAAM and McCrudden having been denied registration, MAAM filing for an exemption, and then MAAM and McCrudden not seeking registration when the basis for the exemption was apparently not applicable. Furthermore, Alnbri not registering must be viewed against the background of MAAM having been denied registration because its principal, McCrudden, was denied registration. As McCrudden was also a principal of Alnbri, a reasonable conclusion is that Alnbri's failure to registration was driven by McCrudden's earlier disqualification.

When viewed in the foregoing context, characterizing the conduct at issue as egregious is appropriate. In reaching this conclusion, the Court has considered and rejected Defendants' position that the breach of the limits for the claimed exemption was "innocent." (See Defs.' Penalty Brief at 8.) First, that McCrudden's acts were deliberate is supported by his admission that the Second Circuit's earlier denial of his appeal "left no reasonable window open for McCrudden to operate a registered entity, or for McCrudden to be registered as an Associated Person." (*Id.* at 4.) Moreover, the claim of innocence is tied to McCrudden statement that between various named attorneys and his "own personal experience with other

attorneys over the years, it was made known to me that as long as the fund maintained 15 clients or less and did not hold itself out as a Commodity Pool Operator . . . the fund could trade futures with an exemption." (*Id.* at 7.) McCrudden provides nothing beyond his conclusory assertion to support that this was the advice he received. In any event, the requirement of 15 clients or less is related to an exemption pursuant to 17 U.S.C. § 4.13(a)(2), which is irrelevant to the present case. In its notice of exemption, MAAM claimed an exemption pursuant to 17 C.F.R. § 4.13(a)(3) which requires that one of the enumerated tests with respect to its commodity interest positions must be met and it is the failure of MAAM to meet any of the test that forms the basis of the finding it did not operate the Hybrid Fund II in accordance with the requirements of the claimed exemption. *See* Complaint ¶ 29. With respect to Alnbri, the applicable regulations require that a notice must be filed to claim exemption from registration and no such notice was filed despite the fact that McCrudden was presumably aware of this requirement as evidenced by the filing of such a notice for MAAM.

The Court now turns to the second and third factors - whether the conduct was isolated or recurrent and the degree of scienter involved. Given the course of conduct described above and viewed against the findings of the CFTC in denying MAAM and McCrudden registration, these factors supports issuance of the requested injunctive relief. Here again, the Court notes the lack of any corrobative evidence as to the legal advice that McCrudden purportedly received as claimed in

his brief. Nor is there anything to indicate whether all the relevant facts were fully disclosed by Defendants to counsel. As to the July 29, 2016 letter from Donald V. Pupke (Ex. S to Defs.' Br.), that letter specifically states that Mr. Pupke's "office was never retained to provide legal advice to [McCrudden] or his companies regarding the establishment of [Hybrid Fund II]." Thus, while Pupke's impression may have been that he was copied on the correspondence so McCrudden would "have another 'fresh set of eyes' to look at the matter to make sure he was acting legally and responsibly" (*id*.), that impression carries little weight. Similarly, the agreement between McCrudden/Alnbri and Sasserath & Zoraian, LLP ("S&Z") (Ex. F to Defs.' Penalty Br.) does not support an absence of scienter. S&Z is a CPA firm. Against that backdrop Defendants' reliance on S&Z's representations that S&Z will (1) review "all the legal documentation including the Fund PPM and partnership agreements [and] [c]oordinat[e] with US legal counsel;" and (2) [l]iaison with outside counsel to ensure proper compliance with Anti Money Laundering requirements as well as Blue Sky Laws" (*id*. at Ltr. p.1) provides no excuse for Defendants' noncompliance. Similarly that S&Z agreed to "maintain in full force and effect all registrations, licenses or consents of any governmental entity or other authority that may be required in connection with *its* activities [as accountants] and will comply in all material respects with applicable laws, regulations and orders to which *it* may be subject" is irrelevant to the issues at hand. (*Id*. at Services Agreement at ¶6.) While Defendants seem to suggest that

this representation made S&Z responsible for the registration as a CPO, such does not comport with the fact that McCrudden and Alnbri made a similar representation and warranty with respect to *their* activities. (*See id*. at ¶ 7.)

Consideration of the fourth and fifth factors also favor granting the relief requested. Absent from Defendants' papers are any assurances that they will not engage in future violations. Even if such assurances were provided, the Defendants' filing in this case which include profane and gutteral language warrants little credence being given to such assurances. Additionally, throughout their penalty phase brief, as well as throughout this litigation, Defendants have refused to acknowledge the wrongful nature of their conduct. Defendants claim that the instant case is the result of "harassment," and a personal vendetta against McCrudden and that "[t]he CFTC should have never brought this case to federal court in the first place . . . ." (Defs.' Penalty Br. at 18-20.) Surely someone who essentially views the CFTC with contempt is unlikely to adhere to the rules and regulations that entity is charged with enforcing. Finally, McCrudden's lack of understanding about his legal obligations raise the specter of a likelihood of violating the Act and/or its regulations in the future.

In sum, the record before this Court warrants granting the requested relief, viz., an injunction permanently banning Defendants from registering and from trading, at least insofar as trading on behalf of others. Whether the trading ban should extend to Defendants' trading solely on their own behalf is not squarely

addressed in the materials submitted. Accordingly, the parties will be permitted to file additional material addressing that issue.

### E. What Civil Monetary Penalty, if any, is Appropriate?

Though the Court takes seriously the gravity of McCrudden's offense and the importance of maintaining the integrity of the markets, in exercising its discretion to impose a penalty rationally related to the offense, the Court concludes that a penalty of the maximum allowable amount for each of the three counts would be excessive. Taking into account the gravity of the violations and all of the attendant circumstances, with special emphasis on McCrudden's financial circumstances and the lack of any evidence that the funds in Hybrid Fund II were mishandled or misappropriated, the Court orders Defendants, jointly and severally, to pay a civil monetary penalty of $60,000.00 in total.

## IV. CONCLUSION

In sum, having carefully considered the submissions of the parties, the Court concludes that a permanent registration ban and permanent ban on trading for, or on behalf of, others, together with a civil monetary fine of $60,000.00 shall be imposed. To the extent either party wishes to address whether the trading ban should extend to Defendants trading on their own behalf, their submissions shall be filed on or before April 16, 2018.

Dated: Central Islip, New York
     March 6, 2018                      s/ Denis R. Hurley
                                                  Denis R. Hurley
                                                  United States District Judge